# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

| | |
|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN WOODY and DAVID FANN <br><br> Defendants <br><br> and <br><br> HE, INC. <br><br> Nominal Defendant. | Case No. 1:25-cv-222 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Associated Industries Insurance Company, Inc., by and through its undersigned counsel, Cozen O'Connor, brings this Complaint against Stephen Woody and David Fann, and in support thereof states as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff, Associated Industries Insurance Company, Inc. ("AIIC"), seeks a declaration that the Private Company Management Liability Insurance Policy ("Policy") that it issued to Avadim Health Inc. ("Avadim") does not afford insurance coverage for a judgment entered against Defendants, Stephen Woody ("Woody") and David Fann ("Fann"), after a jury trial in a civil action captioned *HE, Inc. v. Stephen Woody, et al.*, No. 22CVS002497-100, General Court of Justice Superior Court Division, County of Buncombe, North Carolina ("Underlying Lawsuit").

1

2. After receiving notice of the Underlying Lawsuit, and subject to a reservation of rights, AIIC has advanced, and continues to advance, **Costs of Defense**[1] to Woody and Fann for their defense of the Underlying Lawsuit and appeal of the Judgment.

3. Following a jury trial, the court in the Underlying Lawsuit entered a judgment against Woody and Fann totaling $1,770,000.00 before the application of pre-judgment and post-judgment interest ("Judgment").

4. The court in the Underlying Lawsuit also entered an order in favor of Nominal Defendant HE, Inc. ("HE") and against Woody for statutory attorney's fees totaling $88,872.50 ("Attorney Fees Order").

5. Under the Policy, which must be interpreted under New York law pursuant to a New York choice of law provision, AIIC is not obligated to provide indemnity coverage for the Judgment or Attorney Fees Order.

6. The definition of **Loss** does not include "contractually owed amounts" or "any disgorgement or restitution of ill-gotten gain or recessionary damages."

7. Of the Judgment, a $1.39 million portion represents "contractually owed amounts," namely a contractual debt that was owed by Avadim to HE under a Settlement Agreement dated July 15, 2016 ("2016 SA").

8. Alternatively, the $1.39 million portion of the Judgment represents disgorgement or restitution of ill-gotten gain or recessionary damages.

9. The $1.39 million the Court awarded to HE represents disgorgement or restitution of ill-gotten gains because the court in the Underlying Lawsuit disgorged from Woody and Fann

---

[1] Words in bold have the same meaning and are defined in the Policy annexed hereto as Exhibit 4.

the $1.39 million they obtained as a result of concealing material information to induce HE into executing the Partial Debt Settlement Agreement ("PDSA") and agreeing to convert $1.39 million that it was contractually owed into Avadim stock.

10.     The $1.39 million the Court awarded to HE also represents recessionary damages because the court in the Underlying Lawsuit restored HE to its original position before the PDSA was executed and before HE converted $1.39 million of the outstanding contractual debt it was owed into Avadim stock.

11.     The Policy also states that AIIC shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, relating to, or attributable to any deliberate fraudulent or dishonest act or any willful violation of any statute, rule or law, to the extent it is finally adjudicated that such conduct occurred ("Conduct Exclusion").

12.     The Judgment represents a final adjudication of Woody's and Fann's dishonest acts and willful violation of a statute.

13.     The Judgment is based on the jury's finding and adjudication that Woody and Fann violated N.C. Gen. Stat. Section 75-16.1—that is, the North Carolina Unfair and Deceptive Trade Practices Act.

14.     The Judgment is based on the jury's finding and final adjudication that Woody and Fann concealed material information from HE.

15.     Accordingly, the Conduct Exclusion bars coverage for the Judgment because it arises out of, is based upon, relates to, and is attributable to Woody's and Fann's dishonest acts.

16.     The court in the Underlying Lawsuit also concluded that, based upon the findings of fact and evidence presented, Woody's conduct upon which the jury based its verdict as to the unfair and deceptive practices was willful.

17.     Accordingly, the Conduct Exclusion bars coverage for the portion of the Judgment attributable to Woody because it arises out of, is based upon, relates to, and is attributable to Woody's willful violation of N.C. Gen. Stat. Section 75-16.1.

18.     The Policy also states that AIIC shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, relating to, or attributable to an **Insured** gaining any profit, advantage, remuneration or financial advantage to which they were not legally entitled to the extent it is finally adjudicated that such conduct occurred ("Improper Profit Exclusion").

19.     The Judgment is based on the jury's finding and final adjudication that Woody and Fann concealed material information from HE.

20.     The $1,770,000 Judgment the Court awarded to HE is based on Woody's and Fann's acquisition of profit or gain to which they were not legally entitled.

21.      Accordingly, the Improper Profit Exclusion bars coverage for the Judgment because it arises out of, is based upon, relates to, and is attributable to Woody's and Fann's acquisition of profit or gain to which they were not legally entitled.

22.     A portion of the Judgment also represents treble damages, which are penal in nature and were awarded pursuant to the North Carolina Unfair and Deceptive Trade Practices Act.

23.     Treble damages do not constitute covered **Loss** under the Policy and thus are not recoverable.

4

24.     The Attorney Fees Order does not constitute covered **Loss** under the Policy, because it flows from an uncovered Judgment.

25.     For these reasons, which are explained in greater detail below, AIIC is entitled to a declaration that it does not owe indemnity coverage under the Policy for the Judgment nor the Attorney Fees Order.

## THE PARTIES

26.      AIIC is a Florida corporation engaged in the insurance business with its principal place of business located at 59 Maiden Lane, 42nd Floor, New York, New York 10038 and is, thus, a citizen of Florida and New York. AIIC is authorized to transact business and has transacted business in North Carolina.

27.     Upon information and belief, Defendant Stephen Woody is a citizen and resident of Buncombe County, North Carolina,

28.     Upon information and belief, Defendant David Fann is a citizen and resident of Buncombe County, North Carolina.

29.     Upon information and belief, Nominal Defendant HE is a corporation existing and organized under the laws of Georgia; and is headquartered in Evans, Georgia.  HE is included in this action as a potentially interested party and no claims are being advanced against it.

## JURISDICTION AND VENUE

30.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

31.     Jurisdiction and venue are proper in the Western District of North Carolina under 28 U.S.C. § 1391 because, *inter alia*, Woody and Fann are residents and citizens of Buncombe

5

County, which is within this District; the Policy at issue, under which Woody and Fann qualify as **Insureds**, was issued to Avadim at an address within this District: 81 Thompson Street, Asheville, NC 28803; and the Underlying Lawsuit is pending in the General Court of Justice Superior Court Division, County of Buncombe, North Carolina, which is within this District.

## FACTUAL BACKGROUND

### I.    The Underlying Lawsuit - Second Amended Complaint

32.    HE alleges that the Underlying Lawsuit stems from the execution of the PDSA entered between it and Avadim on or about September 25, 2019. A copy of the operative Second Amended Complaint ("SAC") is annexed hereto as **Exhibit 1**., ¶ 6.

33.    Woody was the CEO of Avadim and Chairman of its Board of Directors; and Fann was the President of Avadim and a member of its Board of Directors. (SAC, ¶¶ 7, 9)

34.    The SAC alleges that one of Avadim's main products was a patented topical skin care and pain relief product line generally known as Theraworx, and that Avadim acquired the patent for Theraworx products from HE on or about March 4, 2013. (SAC, ¶¶ 12-13)

35.    The SAC alleges that the operative contract between Avadim and HE going into the summer of 2019 was a Settlement Agreement dated July 15, 2016 ("2016 SA"), which superseded and replaced all terms and conditions of all previous contracts between Avadim and HE, and sold all HE assets related to the patent to Avadim. (SAC, ¶ 14)

36.    The SAC alleges that since 2016, Avadim failed to pay its debts to HE under the 2016 SA. (SAC, ¶ 15)

37.    The SAC alleges that as of summer 2019, Avadim had accrued an outstanding debt to HE in the amount of several million dollars under the 2016 SA, and that this contractually owed debt was undisputed. (SAC, ¶¶ 16-17)

6

38.     The SAC alleges that, to address the contractually owed debt, Avadim and HE entered into the PDSA on September 25, 2019. (SAC, ¶ 18)

39.     The SAC alleges that, at the time, Woody and Fann had been working to take Avadim public since early 2018. (SAC, ¶ 19)

40.     The SAC alleges that, pursuant to the PDSA, HE agreed to convert $1.39 million of the outstanding debt owed to HE into stock in Avadim, and further agreed to defer the payment of $1.8 million of additional outstanding debt Avadim owed HE until after Avadim's IPO was completed. (SAC, ¶ 20)

41.     The SAC alleges that Woody and Fann assured HE that they believed Avadim would become a public company with an IPO date no later than November 2019. (SAC, ¶ 21)

42.     The SAC alleges that in entering into the PDSA, HE relied on a number of specific misstatements and misrepresentations made by Woody and Fann regarding their efforts to take Avadim public. (SAC, ¶ 22)

43.     The SAC alleges that Woody and Fann misrepresented that Avadim had already acquired an investment banker, and that the investment banker was prepared to handle the IPO. (SAC, ¶ 23)

44.     The SAC alleges these misrepresentations were made to induce HE to enter into the PDSA instead of filing suit against Avadim to recover payment for the outstanding amounts Avadim contractually owed it pursuant to the 2016 SA. (SAC, ¶ 23(d.))

45.     The SAC alleges that Woody and Fann misrepresented that they were prepared to complete the IPO by November 2019. (SAC, ¶ 24)

7

46.     The SAC alleges these misrepresentations were made to induce HE to enter into the PDSA instead of filing suit against Avadim to recover payment for the outstanding amounts Avadim contractually owed it pursuant to the 2016 SA.  (SAC, ¶ 24(c.))

47.     The SAC alleges that Woody and Fann misrepresented that the S-1 filing statement for the IPO was fully written for publication and acceptable to the investment banker, pending the debt relief from HE in entering into the PDSA. (SAC, ¶ 25)

48.     The SAC alleges this statement was made to induce HE to enter into the PDSA instead of filing suit against Avadim to recover payment for the outstanding amounts Avadim contractually owed it pursuant to the 2016 SA. (SAC, ¶ 25(c.))

49.     The SAC alleges that Woody and Fann misrepresented that the investment banker had accepted Avadim's plans to fund its spending to remain solvent, while in truth it was spending inordinate sums on advertising, as disclosed by the KPMG audit of Avadim's 2017 and 2018 financials. (SAC, ¶ 26)

50.     The SAC alleges this statement was made to induce HE to enter into the PDSA instead of filing suit against Avadim to recover payment for the outstanding amounts Avadim contractually owed it pursuant to the 2016 SA. (SAC, ¶ 26(b.))

51.     The SAC alleges that Woody and Fann provided all these statements to HE "to convince HE, Inc. to convert $1,390,000 of [Avadim's] debt owed to HE, Inc. into shares of stock under the PDSA, and further to defer payment of $1,800,000 until after the IPO was complete." (SAC, ¶ 27)

52.     The SAC alleges that, as a direct and proximate result of Woody's and Fann's wrongful conduct, HE determined not to pursue the default on the  contractual debt it was owed

and obtain a judgment against Avadim, which at the time had the assets to pay such a judgment, and instead entered into the PDSA. (SAC, ¶ 65)

53.     The SAC alleges that HE was "lured" by Woody and Fann into not pursuing the contractual amount it was owed under the 2016 SA in hopes of the IPO going through in November 2019. (SAC, ¶ 66)

54.     The SAC alleges that HE missed the opportunity to collect on the debt and "forfeited" a significant portion of it when Avadim had assets to pay. (SAC, ¶ 68)

55.     The SAC ultimately seeks damages given that HE missed the opportunity to collect on its debt owed under the agreements between HE and Avadim in light of Woody's and Fann's misconduct; and trebled damages pursuant to its unfair and deceptive claim practices claim.

## II.     <u>The Judgment</u>

56.     A jury trial was held in the Underlying Lawsuit from March 3, 2025 to March 7, 2025.

57.     The jury returned a verdict on March 7, 2025.

58.     On March 28, 2025, the Judgment was entered against Woody and Fann. A copy of the Judgment is annexed hereto as **Exhibit 2**.

59.     The Judgment states that Woody and Fann made negligent misrepresentations to HE, Inc.

60.     The Judgment states that HE was damaged by Woody's and Fann's concealing of material information, "the disclosure of which would have resulted in HE, Inc. not entering into the Partial Debt Settlement Agreement ("PDSA") but instead filing suit against Avadim for the debt owed to HE, Inc. at that time." (*Id*.)

9

61.     The Judgment awards HE damages of $789,999.00 against Woody plus 8% pre-judgment and post-judgment interest, as well as treble damages in the amount of $379,998.00 plus 8% post-judgment interest. (*Id.*)

62.     The Judgment awards HE damages of $600,001.00 against Fann plus 8% pre-judgment and post-judgment interest, as well as treble damages of $2.00 plus 8% post-judgment interest. (*Id.*)

63.     The Judgment states that Woody and Fann violated the North Carolina Unfair and Deceptive Trade Practices Act.

64.     The amount awarded to HE, Inc. in the Judgment—that is, $789,999.00 plus $600,001.00, which totals $1,390,000.00—represents the exact amount that HE, Inc. agreed to invest in Avadim pursuant to the PDSA.

**III.     The Attorney Fees Order**

65.     On June 24, 2025, the court in the Underlying Lawsuit issued the Attorney Fees Order. A copy of the Attorney Fees Order is annexed hereto as **Exhibit 3**.

66.     The Attorney Fees Order states that the jury entered a verdict against Woody in HE's favor based on HE's claim under N.C. Gen. Stat. Section 75-16.1—that is, North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA")—for unfair and deceptive practices. (Ex. 3, Findings of Fact ¶ 1)

67.     The Attorney Fees Order states that Woody knew about and withheld key information, particularly information within a KPMG audit, that would have made a material difference in HE's decision to enter into the PDSA and thus forego filing suit on the uncontested contractual debt owed to HE in 2019. (Ex. 3, Findings of Fact ¶ 3)

10

68.     The Attorney Fees Order concludes, based upon the findings of fact and evidence presented, that Woody's act or practice upon which the jury based its verdict as to unfair and deceptive practices was willful. (Ex. 3, Conclusions of Law ¶ 2)

69.     The Attorney Fees Order concludes that an attorney fee award of $88,872.50 constitutes a reasonable fee for the services rendered to HE in pursuit of the unfair and deceptive practices judgment against Woody. (Ex. 3, Conclusions of Law ¶ 5)

## **THE POLICY**

70.     AIIC issued a claims-made Private Company Management Liability Insurance Policy, Including Employment Practices Claims Coverage, number ANV137167A, to "Avadim Health, Inc." for the period of February 28, 2021 to February 28, 2022, with run-off coverage through February 28, 2028 per Endorsement No. 17 ("Policy"). A copy of the Policy is annexed hereto as **Exhibit 4**.

71.     The Policy provides, in relevant part, limits of liability of $5 million for all **Loss** for all **Claims** other than **Employment Practices Claims** and/or **Securities Claims**, subject to a $100,000 each **Claim** Retention. (Ex. 4, p. 3)

72.     The Policy does not impose a duty to defend upon AIIC.

73.     Insuring Agreement A of the Policy provides as follows: "[t]he **Insurer** shall pay on behalf of an Insured Person all **Loss** for which such **Insured Person** is not indemnified by the **Company** and is legally obligated to pay as a result of a **Claim** for a **Wrongful Act** first made against the **Insured Person** during the **Policy Period,** or the applicable Discovery Period pursuant to Section VIII, and reported to the **Insurer** in compliance with Section VII." (Ex. 4, p. 10)

74.     Insuring Agreement B of the Policy provides as follows: "[t]he **Insurer** shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to an **Insured**

**Person**, and for which the **Insured Person** has become legally obligated to pay on account of a **Claim** for a **Wrongful Act** first made against the **Insured Person** during the **Policy Period,** or the applicable Discovery Period pursuant to Section VIII, and reported to the **Insurer** in compliance with Section VII." (Ex. 4, p. 10)

75. A **Claim** under the Policy means, in relevant part:

> 2) a civil, administrative, regulatory or arbitration proceeding, against any **Insured Person** or the **Company** seeking monetary or non-monetary relief, including any proceeding or investigation by or before the U.S. Equal Employment Opportunity Commission ("EEOC") or any other federal, state or local governmental body, commenced by: a) the service of a complaint or similar pleading; or b) the filing of a notice of charges, investigative order or similar document . . . ;

*  *  *

> A **Claim** shall be deemed "made" at the time it is received by an **Insured**. (Ex. 4, p. 11)

76. **Company** means "the entity or organization identified as the Named Insured in the Declarations and any **Subsidiary**, and in the event of a bankruptcy, shall include the **Company** and any **Subsidiary** as a debtor in possession, if any, as such term is used in Chapter 11 of the United States Bankruptcy Code." (Ex. 4, p. 12)

77. **Directors and Officers** "mean all persons who were, now are, or shall be duly elected or appointed directors, officers, trustees or members of the board of managers of the **Company** and all persons serving in a functionally equivalent role for the **Company** if serving in such a position outside the United States." (Ex. 4, p. 14)

78. **Insured** means "any **Insured Person** and the **Company**." (Ex. 4, p. 16)

79. **Insured Person** "means . . . 1) **Directors and Officers**." (Ex. 4, p. 16)

80. **Loss** means "compensatory damages, statutory attorneys' fees, pre- and post-judgment interest, **Derivative Demand Investigation Costs** and **Costs of Defense,** in excess of

the Retention. **Loss** shall also include, subject to the other terms, conditions and exclusions of this Policy, punitive or exemplary damages and the multiple portions of any multiplied damage award, judgments or settlements to the extent insurable under the law of any applicable jurisdiction most favorable to insurability." (Ex. 4, p. 17)

81.     "**Loss** shall not include: (1) civil or criminal fines or penalties imposed by law; (2) taxes; (3) any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured;** . . . (7) contractually owed amounts; (8) any disgorgement or restitution of ill-gotten gain or recessionary damages; or (9) matters which are uninsurable under the law pursuant to which this Policy shall be construed." (Ex. 4, p. 17)

82.     "**Wrongful Act** shall mean:

1)      any actual or alleged act, omission, error, misstatement, misleading statement, neglect, or breach of duty, by any **Insured Person** in their capacity as such with the **Company**, including, if coverage is purchased as stated in the Declarations, any **Employment Practices Wrongful Act** or **Third Party Discrimination.**

2)      any matter claimed against any **Insured Person** solely by reason of their capacity as such with the **Company** . . . [.]" (Ex. 4, p. 19)

83.     Pursuant to the Improper Profit Exclusion, AIIC is not liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, relating to, or attributable to an **Insured** gaining any profit, advantage, remuneration or financial advantage to which they were not legally entitled to the extent it is finally adjudicated that such conduct occurred. (Ex. 4, pp. 19-20)

84.     Pursuant to the Conduct Exclusion, AIIC is not liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, relating to, or attributable to any deliberate fraudulent or dishonest act or any willful violation of

13

any statute, rule or law, or deliberate criminal acts of an **Insured**; provided however, this exclusion shall only apply if it is finally adjudicated that such conduct occurred. (*Id.*)

## THE PARTIES' COVERAGE DISPUTE

85.    On July 15, 2022, Bill Dixon of AmWINS reported, on behalf of Woody and Fann, an initial complaint filed in the Underlying Lawsuit to ANV Global Services, Inc. ("ANV"), AIIC's representative under the Policy for purposes of receiving notices and correspondence, among other duties.

86.    On August 15, 2022, on behalf of AIIC, ANV issued a letter denying coverage for the Underlying Lawsuit. A copy of the August 15, 2022 Letter is annexed hereto as **Exhibit 5**.

87.    ANV took the position in the August 15, 2022 Letter that although the Underlying Lawsuit is a **Claim** made and reported to AIIC against **Insured Persons** during the Policy's **Discovery Period**, no coverage was available (1) because **Loss** does not include contractually owed amounts; and (2) because HE was seeking to collect on the debt it was owed by Avadim pursuant to the 2016 SA. (Ex. 5)

88.    On August 17, 2022, counsel wrote to ANV, challenged its coverage position, and requested that it reevaluate coverage for **Costs of Defense** associated with the Underlying Lawsuit.

89.    On August 23, 2022, ANV issued a supplemental coverage position letter regarding the Underlying Lawsuit. A copy of the August 23, 2022 Letter is annexed hereto as **Exhibit 6**.

90.    ANV's August 23, 2022 correspondence replaced its August 5, 2022 Letter. (*See* Ex. 6)

91.    ANV advised Woody and Fann that the complaint filed in the Underlying Lawsuit qualified as a **Claim** made and reported to ANV against **Insured Persons** during the Policy's **Discovery Period** pursuant to Endorsement No. 17. (*Id.*)

14

92.     ANV further advised Woody and Fann that it would agree to reimburse the reasonable and necessary **Costs of Defense** they incurred in the defense of the Underlying Lawsuit, subject to a reservation of rights. (*Id.*)

93.     ANV also advised Woody and Fann that because **Loss** does not include contractually owed amounts, and that because HE was seeking to collect on the debt it was owed by Avadim pursuant to the 2016 SA, the Policy would not provide any indemnity coverage for the relief sought in the Underlying Lawsuit. (*Id.*)

94.     ANV further reserved AIIC's rights under the Policy regarding the Underlying Lawsuit. (*Id.*)

95.     ANV specifically reserved its rights to deny coverage for the Underlying Lawsuit pursuant to the Conduct Exclusion and definition of **Loss**. (*Id.*)

96.     From August 2022 through the present time, ANV has advanced and covered Woody's and Fann's **Costs of Defense**, subject to its reservation of rights.

97.     After ANV received and reviewed the Judgment, it issued a letter to Woody and Fann dated June 10, 2025. A copy of the June 10, 2025 Letter is annexed hereto as **Exhibit 7**.

98.     ANV advised Woody and Fann that the Judgement included contractually owed amounts, which did not qualify as **Loss** under the Policy and therefore AIIC did not have an obligation to provide indemnity coverage. (*See* Ex. 7)

99.     ANV further advised Woody and Fann that the Judgment was based on a jury finding that the **Insureds** concealed material information, the disclosure of which would have resulted in HE not entering into the PDSA. Accordingly, ANV advised that the Judgment was not a covered **Loss** because HE was seeking amounts that represented disgorgement or restitution of ill-gotten gain or recessionary damages. (*Id.*)

15

100.    ANV also advised Woody and Fann that it would advance their **Costs of Defense** regarding the appeal of the Judgment, subject to a reservation of rights. (*Id.*)

101.    ANV reserved all rights under the Policy, including under the Conduct Exclusion and with respect to the treble damages aspect of the Judgment. (*Id.*)

102.    Thereafter, counsel for Woody and Fann inquired whether ANV would cover an appellate bond.

103.    On June 24, 2025, ANV issued a letter to Woody and Fann. A copy of the June 24, 2025 Letter is annexed hereto as **Exhibit 8**.

104.    ANV advised that **Costs of Defense** include the "… appeal of any **Claim** against an **Insured**, (including the costs of an appeal bond, attachment bond or similar bond but will not include the obligation to apply for or furnish such bonds)…" (Ex. 8)

105.    ANV reiterated that no coverage was available for the Judgment under the Policy, since it did not constitute covered **Loss**. (*Id.*)

106.    ANV advised Woody and Fann that, after further consideration, it determined that the Conduct Exclusion barred coverage for the $380,000 portion of the Judgment, because it constituted a final adjudication of Woody's and Fann's misconduct. (*Id.*)

107.    ANV further advised Woody and Fann that the Policy should not and could not be used as collateral for securing an appellate bond, since there is no indemnity coverage available for the Judgment. (*Id.*)

108.    ANV also demanded that Woody and Fann advise any bonding company with whom they were working that coverage was unavailable for the Judgment under the Policy. (*Id.*)

109.    After ANV sent its correspondence, later on June 24, 2025, it received an email from Woody's and Fann's present counsel advising ANV that the June 24, 2025 Letter was

16

directed at Woody's and Fann's previous counsel, and that all correspondence should instead be directed to his attention.

110. That same day—on June 24, 2025—ANV also sent Woody's and Fann's present counsel a copy of ANV's June 10, 2025 Letter.

## **CASE & CONTROVERSY**

111. The Judgment entered against Woody and Fann involves damages in excess of Seventy-Five Thousand Dollars ($75,000.00). (*See* Ex. 2)

112. Coverage for the Judgment is barred, in whole or in part, by the terms, limitations, conditions, definitions, and exclusions of Policy.

113. Woody and Fann have made a claim for coverage under the Policy with respect to the Underlying Lawsuit.

114. AIIC believes and therefore avers that a *bona fide* case and controversy exists as between AIIC and Woody and Fann regarding any claimed insuring obligations under the Policy referenced herein, which is ripe for disposition.

## **FIRST CAUSE OF ACTION[2]**
### **(The Improper Profit Exclusion Bars Coverage Under the Policy for the Judgment)**

115. AIIC incorporates by reference Paragraphs 1 through 114 of this Complaint as if set forth at length herein.

116. AIIC is under no obligation to indemnify Woody and Fann with respect to the Judgment pursuant to the express terms, conditions, and exclusions of the Policy.

117. The Policy includes a New York choice of law provision; and AIIC has its principal place of business in New York and is a citizen of New York.

---

[2] By listing any matter as a cause of action, AIIC does not assume the burden of proving any matter upon which Woody and Fann bear the burden of proof under applicable law as alleged **Insureds**.

17

118. New York law governs the interpretation of the Policy.

119. The Policy states that AIIC shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, relating to, or attributable to an **Insured** gaining any profit, advantage, remuneration or financial advantage to which they were not legally entitled to the extent it is finally adjudicated that such conduct occurred ("Improper Profit Exclusion").

120. The Judgment is based on the jury's finding and final adjudication that Woody and Fann concealed material information from HE in order to induce it into executing the PDSA.

121. The Judgment states that Woody and Fann concealed material information, the disclosure of which would have resulted in HE not entering into the [PDSA] but instead filing suit against Avadim for the debt owed to HE at that time.

122. Woody and Fann thus gained from HE a profit, advantage, remuneration or financial advantage to which they were not legally entitled.

123. The $1,770,000 Judgment the Court awarded to HE is based on Woody's and Fann's acquisition of profit or gain to which they were not legally entitled.

124. Accordingly, the Improper Profit Exclusion bars coverage for the Judgment because it arises out of, is based upon, relates to, and is attributable to Woody's and Fann's acquisition of profit or gain to which they were not legally entitled

125. AIIC has complied with all terms and conditions under the Policy, or is excused from doing so based on Woody's and Fann's conduct.

126. AIIC is entitled to a declaration, pursuant to 28 U.S.C. §2201, that it has no duty to indemnify Woody and Fann under the Policy with respect to the Judgment.

18

127.    There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

## SECOND CAUSE OF ACTION
**(The Conduct Exclusion Bars Coverage Under the Policy for the Judgment)**

128.    AIIC incorporates by reference Paragraphs 1 through 127 of this Complaint as if set forth at length herein.

129.    AIIC is under no obligation to indemnify Woody and Fann with respect the Judgment pursuant to the terms, conditions, and exclusions of the Policy.

130.    Pursuant to the Policy's Conduct Exclusion, AIIC is not liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, relating to, or attributable to any deliberate fraudulent or dishonest act or any willful violation of any statute, rule or law, to the extent it is finally adjudicated that such conduct occurred.

131.    New York law governs the interpretation of the Policy.

132.    The Judgment represents a final adjudication of Woody and Fann's misconduct.

133.    The Judgment is based on the jury's findings and adjudication that Woody and Fann concealed material information from HE in order to induce HE into executing the PDSA.

134.    The Judgment is based on the jury's finding and adjudication that Woody and Fann violated North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") by engaging in misrepresentations.

135.    The Judgment thus arises out of, is based upon, relates to, and is attributable to Woody's and Fann's dishonest acts.

136.    Accordingly, the Conduct Exclusion bars coverage for the Judgment.

19

137.    AIIC has complied with all terms and conditions under the Policy, or is excused from doing so based on Woody's and Fann's conduct.

138.    AIIC is entitled to a declaration, pursuant to 28 U.S.C. §2201, that it has no duty to indemnify Woody and Fann under the Policy with respect to the Judgment.

139.    There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

### THIRD CAUSE OF ACTION
**(In the Alternative to Third Cause of Action: As to Woody, the Conduct Exclusion Bars Coverage Under the Policy for the Judgment)**

140.    AIIC incorporates by reference Paragraphs 1 through 139 of this Complaint as if set forth at length herein.

141.    AIIC is under no obligation to indemnify Woody with respect to the Judgment pursuant to the terms, conditions, and exclusions of the Policy.

142.    Pursuant to the Policy's Conduct Exclusion, AIIC is not liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, relating to, or attributable to any deliberate fraudulent or dishonest act or any willful violation of any statute, rule or law, to the extent it is finally adjudicated that such conduct occurred.

143.    New York law governs the interpretation of the Policy.

144.    The Judgment represents a final adjudication of Woody' misconduct.

145.    The Judgment is based on the jury's findings and adjudication that Woody concealed material information from HE.

146.    The Judgment and Attorney Fees Order is based on findings that Woody knew about and withheld key information, particularly information within a KPMG audit, that would

have made a material difference in HE's decision to enter the PDSA and thus forego filing suit on the uncontested debt to HE in 2019.

147.   The Judgment is based on the jury's finding and adjudication that Woody violated N.C. Gen. Stat. Section 75-16.1—that is, the UDTPA.

148.   The court in the Underlying Lawsuit concluded that, based upon the findings of fact and evidence presented, Woody's conduct upon which the jury based its verdict as to the unfair and deceptive practices was willful.

149.   The Judgment is based on the jury's findings and adjudication that Woody willfully violated N.C. Gen. Stat. Section 75-16.1—that is, the UDTPA.

150.   Thus, as to Woody, the Judgment arises out of, is based upon, relates to, and is attributable to the willful violation of a statute.

151.   The court in the Underlying Lawsuit has finally adjudicated that Woody engaged in such conduct.

152.   Accordingly, as to Woody, the Conduct Exclusion bars coverage for the Judgment because it arises out of, is based upon, relates to, and is attributable to Woody's willful violation of N.C. Gen. Stat. Section 75-16.1—that is, the UDTPA.

153.   AIIC has complied with all terms and conditions under the Policy, or is excused from doing so, based on Woody's conduct.

154.   AIIC is entitled to a declaration, pursuant to 28 U.S.C. §2201, that it has no duty to indemnify Woody under the Policy with respect to the portion of the Judgment attributable to Woody.

155.   There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

## FOURTH CAUSE OF ACTION
### (The $1.39M Portion of the Judgment Awarded Against Woody & Fann Represents Contractually Owed Amounts and Not Covered Loss Under the Policy)

156.    AIIC incorporates by reference Paragraphs 1 through 155 of this Complaint as if set forth at length herein.

157.    AIIC is under no obligation to indemnify Woody and Fann with respect to the Judgment pursuant to the terms, conditions, and exclusions of the Policy.

158.    New York law governs the interpretation of the Policy.

159.    The definition of **Loss** does not include "contractually owed amounts."

160.    In the Underlying Lawsuit, HE alleged it missed the opportunity to collect on an outstanding contractual debt it was owed, and sought damages for that contractual debt.

161.    In the Underlying Lawsuit, HE alleged that Woody and Fann made misrepresentations and concealed material information to induce HE to enter into the PDSA instead of filing suit against Avadim to recover payment for the outstanding amounts Avadim contractually owed it pursuant to the 2016 SA.

162.    HE agreed under the PDSA to convert $1.39 million of the outstanding debt Avadim contractually owed HE into stock in Avadim.

163.    The Judgment includes jury findings and an adjudication that Woody and Fann concealed material information from HE to induce HE to enter into the PDSA instead of filing suit against Avadim to recover payment for the outstanding amounts Avadim contractually owed HE pursuant to the 2016 SA.

164.    The Judgment awarded HE $1.39 million, which represents contractually owed amounts, namely the outstanding corporate debt that was owed by Avadim to HE.

165. More specifically, the $1.39 million the court awarded to HE represents the $1.39 million HE was contractually owed under the 2016 SA.

166. The $1.39 million the Court awarded to HE flowed from amounts HE was owed under the 2016 SA

167. The $1.39 million portion of the Judgment does not constitute covered **Loss** under the Policy.

168. Accordingly, AIIC has no obligation to provide indemnification coverage for the $1.39 million portion of the Judgment.

169. AIIC has complied with all terms and conditions under the Policy, or is excused from doing so based on Woody's and Fann's conduct.

170. AIIC is entitled to a declaration, pursuant to 28 U.S.C. §2201, that it has no duty to indemnify Woody and Fann under the Policy with respect to the $1.39 million portion of the Judgment.

171. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

**FIFTH CAUSE OF ACTION**
**(In the Alternative to the Fourth Cause of Action): The $1.39M Portion of the Judgment Awarded Against Woody and Fann Represents Disgorgement or Restitution of Ill-gotten Gains or Recessionary Damages and Not Covered Loss Under the Policy)**

172. AIIC incorporates by reference Paragraphs 1 through 171 of this Complaint as if set forth at length herein.

173. AIIC is under no obligation to indemnify Woody and Fann with respect to the Judgment pursuant to the terms, conditions, and exclusions of the Policy.

174. The definition of **Loss** does not include "disgorgement or restitution of ill-gotten gain or recessionary damages."

175.     New York law governs the interpretation of the Policy.

176.     In the Underlying Lawsuit, HE alleged that it was lured into not pursuing the contractual amount it was owed under the 2016 SA in hopes of the IPO going through in November 2019.

177.     In the Underlying Lawsuit, HE alleged that, as a result of the misrepresentations and omissions of Woody and Fann, it missed the opportunity to collect on outstanding contractual debt and forfeited a significant portion of it when Avadim had assets to pay.

178.     In the Underlying Lawsuit, HE argued that it was entitled to redress for the $1.39 million it forfeited by entering into the PDSA in reliance on Woody's and Fann's misconduct.

179.     In the Underlying Lawsuit, HE alleged that Woody and Fann made misrepresentations and concealed material information to induce HE to enter into the PDSA instead of filing suit against Avadim to recover payment for the outstanding amounts Avadim contractually owed it pursuant to the 2016 SA.

180.     The Judgment was based on the jury finding and adjudication that Woody and Fann concealed material information, "the disclosure of which would have resulted in HE, Inc. not entering into the Partial Debt Settlement Agreement ("PDSA") but instead filing suit against Avadim for the debt owed to HE, Inc. at that time." (*See* Ex. 2)

181.     The Judgment awards HE $1.39 million, which represents disgorgement or restitution of ill-gotten gains or recessionary damages.

182.     The $1.39 million the Court awarded to HE represents disgorgement or restitution of ill-gotten gains because the court in the Underlying Lawsuit disgorged from Woody and Fann the $1.39 million they obtained as a result of their concealment of material information.

183. The $1.39 million the Court awarded to HE also represents recessionary damages because the court in the Underlying Lawsuit restored HE to its original position before the PDSA was executed and before HE converted $1.39 million of the outstanding debt it was owed into additional Avadim stock.

184. The $1.39 million portion of the Judgment does not constitute covered **Loss** under the Policy because **Loss** does not include disgorgement or restitution of ill-gotten gains or recessionary damages.

185. Accordingly, AIIC has no obligation to provide indemnification coverage for the $1.39 million portion of the Judgment.

186. AIIC has complied with all terms and conditions under the Policy, or is excused from doing so based on Woody's and Fann's conduct.

187. AIIC is entitled to a declaration, pursuant to 28 U.S.C. §2201, that it has no duty to indemnify Woody and Fann under the Policy with respect to the $1.39 million portion of the Judgment.

188. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

### SIXTH CAUSE OF ACTION
**(The Attorney Fees Order Does Not Qualify as Loss and Therefore is
Not Covered Under The Policy)**

189. AIIC incorporates by reference Paragraphs 1 through 188 of this Complaint as if set forth at length herein.

190. AIIC is under no obligation to indemnify Woody with respect to the Attorney Fees Order pursuant to the express terms, conditions, and exclusions of the Policy.

191. New York law governs the interpretation of the Policy.

192.    The Judgment does not constitute covered **Loss** under the Policy.

193.    AIIC is not obligated to provide any indemnity coverage associated with the Judgment entered in the Underlying Lawsuit.

194.    Because the Judgment does not qualify as covered **Loss**, AIIC is not obligated to provide coverage under the Policy for any statutory attorneys' fees, or pre- and post-judgment interest awarded.

195.    Accordingly, the Policy does not afford coverage for the Attorney Fees Order issued against Woody, since coverage is unavailable for the Judgment from which the Attorney Fees Order flows.

196.    AIIC has complied with all terms and conditions under the Policy, or is excused from doing so based on Woody's conduct.

197.    AIIC is entitled to a declaration, pursuant to 28 U.S.C. §2201, that it has no duty to indemnify Woody under the Policy with respect to the Attorney Fee Award.

198.    There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

**WHEREFORE**, Associated Industries Insurance Company, Inc. respectfully requests that this Honorable Court enter an Order:

(1)    Declaring that Associated Industries Insurance Company has no duty to indemnify Stephen Woody and David Fann in connection with the Judgment and Attorney Fee Order entered in the civil action captioned *HE, Inc. v. Stephen Woody, et al.*, No. 22CVS002497-100, General Court of Justice Superior Court Division, County of Buncombe, North Carolina; and

(2)    A Judgment and/or Order for such other relief consistent with the claims and causes of action asserted in this Complaint.

[Signature on following page]

26

Respectfully submitted,

_/s/ Charles Kinney_
Charles Kinney
NC Bar ID: 41367
COZEN O'CONNOR
301 South College Street, Suite 2100
Charlotte, NC 28202
Telephone: (704) 348-3471
Facsimile: (704) 334-3351
cakinney@cozen.com

Rafael Rivera, Jr. (To be admitted _Pro Hac Vice_)
COZEN O'CONNOR
3 WTC, 175 Greenwich Street, 55th Floor
New York, NY 10007
Telephone: (212) 453-3879
Facsimile: (646) 588-1372
rafaelrivera@cozen.com

Gary L. Gassman (To be admitted _Pro Hac Vice_)
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 382-3100
Facsimile: (312) 382-8910
ggassman@cozen.com
_Attorneys for Defendant Associated Industries
Insurance Company, Inc._

Dated: July 16, 2025

27