# EXHIBIT 4



# North Carolina State Amendatory Endorsement

The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund.

Name of Surplus Lines Broker: Amwins Brokerage of New Jersey, Inc.

License Number:1000002011



## POLICY DECLARATIONS

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY

## INCLUDING EMPLOYMENT PRACTICES CLAIMS COVERAGE

This policy is a claims made and reported policy which covers only claims first made against the insured during the policy period. The limit of liability available to pay loss, including judgments or settlement amounts, may be reduced by amounts incurred for costs of defense. Further note that amounts incurred for costs of defense may be applied against the applicable retention amount.

**Please read this policy carefully.**

One Company. One Focus - Managing Global Risk

## Item A

**Policy Number: ANV137167A**

**Renewal of Policy Number: ANV137167A**

**ANV GLOBAL SERVICES INC.
ON BEHALF OF:**
ASSOCIATED INDUSTRIES INSURANCE COMPANY INC. – 100%

**Policy No. :** **ANV137167A**

## Item B

**Named Insured:**
**Avadim Health, Inc.**

**Broker Name:**
**AmWINS Brokerage of New Jersey**

**Mailing Address:**
81 Thompson Street
Asheville, NC 28803

**Mailing Address:**
150 Morristown Road, Suite 108
Bernardsville, NJ 07924

## Item C

**Policy Period:**

From **February 28, 2021** to **February 28, 2022** at 12:01 A.M. Standard Time at your mailing address shown above.

## Item D

| LIMITS OF LIABILITY* | Shared Limit | Separate Limit | Aggregate Limit |
|---|---|---|---|
| Aggregate Limit for all **Loss** under all Coverages combined: | | | $5,000,000 |
| Limit for all **Loss** for all **Claims** other than **Employment Practices Claims** and/or **Securities Claims** | $5,000,000 | N/A | |
| Limit for all **Loss** for all **Claims** for **Employment Practices Wrongful Acts** | $1,000,000 | N/A | |
| Limit for all **Loss** for all **Claims** for **Third Party Discrimination** | $1,000,000 | | |
| Limit of Liability for all **Loss** for all **Securities Claims** | $5,000,000 | | |
| SUBLIMITS OF LIABILITY* | | | |
| Sublimit for all **Loss** for all **Derivative Demand Investigation Costs** | $250,000 | | |
| Sublimit for all **Loss** for all **Crisis Management Expenses** | Not Covered | | |

*Includes Costs of Defense*

## Item E

| RETENTION* | |
|---|---|
| **COVERAGE PART** | **RETENTION** |
| Each **Claim** | $100,000 |
| Each **Claim** alleging an **Employment Practices Wrongful Act** | $150,000 |
| Each **Claim** alleging **Third Party Discrimination** | $150,000 |
| Each **Securities Claim** | $100,000 |

*Applies to Costs of Defense*

## Item F

| DISCOVERY PERIOD | |
|---|---|
| **Term** | **Additional Premium** |
| 12 Months | 150% |

## Item G

| PRIOR AND PENDING LITIGATION DATE | |
|---|---|
| **COVERAGE PART** | **DATE** |
| **Securities Claims:** | January 28, 2015 |
| **Employment Practices Claims:** | January 28, 2015 |
| All other **Claims:** | January 28, 2015 |

## Item H

**Insurer:  Amtrust Underwriters, Inc on behalf of Associated Industries Insurance Company, Inc.**

**Notices to:**
**Notice of Claim or Potential Claim:**

Attn: Claims Department

ANV Global Services, Inc.,
200 Hudson Street , Suite 800
Jersey City, NJ  07311
Email: MGAClaims@anv.us.com

**All other notices:**

P Underwriting Group

ANV Global Services, Inc.,
200 Hudson Street , Suite 800
Jersey City, NJ 07311
PLUnderwriting@anv.us.com

ANV One Company. One Focus - Managing Global Risk

Case 1:25-cv-00222-MR-WCM    Document 1-4    Filed 07/16/25    Page 5 of 71



**I tem I**

**Premium:**  $72,000

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.

THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION FOR THIS POLICY INCLUDING INFORMATION FURNISHED IN CONNECTION THEREWITH, AND THE COVERAGE FORM AND ANY ENDORSEMENTS ATTACHED HERETO, CONSTITUTE THE ABOVE NUMBERED INSURANCE POLICY.

April 8, 2021
(Date)

(Authorized Representative)

## *Schedule of Forms:*

| Form Number: | Description: |
|---|---|
| ANV PL 1138 | North Carolina State Amendatory |
| ANV PV 0001 | ANV Private Company Management Liability Insurance Policy |
| ANV PL 0028 | Cap On Losses From Certified Acts of Terrorism |
| ANV PL 0102 | U.S. Treasury Department OFAC Advisory Notice |
| ANV PL 0149 | Amend Cost of Defense and Settlement |
| ANV PL 0010 | Absolute Bodily Injury And Property Damage Exclusion |
| ANV PL 0135 | Employment Practices Claims-Duty To Defend |
| ANV PL 0083 | Product Liability Exclusion |
| ANV PV 0035 | Dedicated Executive Limit Endorsement |
| ANV PL 0036 | Defense Only Limit |
| ANV PL 0040 | Discovery Period - Optional Time |
| ANV PL 0072 | Non-Rescission Endorsement |
| ANV PL 1000 | Application Severability |
| ANV PL 0034 | Federal Immigration and Nationality Act Costs of Defense Coverage |
| ANV PV 0104 | Fiduciary Liability Insurance Endorsement |
| ANV PL 0103 | Fiduciary Liability Definition Of Loss Extension Endorsement |
| ANV PL 1227 | ANV Cyber Endorsement |
| ANV PL 2020 | Amend Wage Exclusion |

 

# *Employment Practices Liability (EPL Hotline)*

ANV is pleased to offer its Employment Practices Liability policyholders with a Hotline providing access to the employment law firm of Genova Burns LLC, a preeminent employment law and litigation firm with over twenty-five years experience representing employers in all regions of the United States. The firm's practice spans all industries, including but not limited to technology, healthcare, financial services, construction, manufacturing, transportation and hospitality. Genova Burns provides business owners, managers, and human resource professionals with strategy, advice and counseling on all employment-related issues.

Through the use of the Genova Burns dedicated team, we now offer policyholders up to two (2) hours of calls to the Hotline at no additional charge. The Hotline is designed to provide quick, practical guidance on day-to-day workplace issues. To utilize the hotline, simply call 844-206-4626 or e-mail [anvhotline@genovaburns.com](mailto:anvhotline@genovaburns.com).

From reviewing the proper steps for a sexual harassment investigation to discussing the appropriate factors to consider before you make day-to-day employment decisions, Genova Burns LLC's attorneys are available to assist policyholders in managing their workplace risk and minimizing employment related claims. As part of this program, policyholders are also eligible to receive a discount on Genova Burns LLC's regular fees for matters beyond the scope of the Hotline. Matters beyond the scope of the Hotline would include those dealing with specific employees or employment decisions, or determinations on legal compliance.

Please note that the Hotline cannot be used to report a claim or for a determination of policy coverage regardless of any disclosure made to Genova Burns LLC.

We encourage policyholders to take advantage of this Hotline. For further information about the Hotline, please visit [http://www.anv.us.com/content/claims](http://www.anv.us.com/content/claims)

| Section | Contents |
|---|---|
| I. | Insuring Agreement |
| II. | Definitions |
| III. | Exclusions |
| IV. | Limit of Liability |
| V. | Retention |
| VI. | Costs of Defense and Settlements |
| VII. | Notice of Claim |
| VIII. | Discovery Period |
| IX. | General Conditions: |

- A. Cancellation
- B. Application
- C. Action Against the Insurer
- D. Conversion to Run-off Coverage
- E. Outside Entity and Joint Venture Program
- F. Other Insurance
- G. Coverage Extension
  1. Lawful Spouse or Domestic Partner Provision
  2. Worldwide Provision
  3. Estates and Legal Representatives
- H. Priority of Payments
- I. Subrogation
- J. Choice of Law
- K. Assignment
- L. Company Represents Insureds
- M. Representative of the Insurer
- N. Bankruptcy
- O. Headings
- P. Entire Agreement
- Q. Dispute Resolution
- R. Service of Suit

| X. | Participation |

**THIS IS A CLAIMS MADE AND REPORTED POLICY WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY. COVERAGE APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE DURING THE POLICY PERIOD AND REPORTED DURING THE POLICY PERIOD OR ANY DISCOVERY PERIOD, IF APPLICABLE. WORDS PRINTED IN BOLD FACE, OTHER THAN CAPTIONS, ARE DEFINED IN THE POLICY. VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

# Private Company Management Liability Insurance Policy
# Including Employment Practices Claims Coverage

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the **Insurer** shown in the Declarations, including those furnished in the **Application**, and subject to all terms, conditions and limitations of this Policy, it is agreed:

## Section I.     Insuring Agreements

A. The **Insurer** shall pay on behalf of an **Insured Person** all **Loss** for which such **Insured Person** is not indemnified by the **Company** and which the **Insured Person** is legally obligated to pay as a result of a **Claim** for a **Wrongful Act** first made against the **Insured Person** during the **Policy Period**, or the applicable Discovery Period pursuant to Section VIII, and reported to the **Insurer** in compliance with Section VII.

B. The **Insurer** shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to an **Insured Person**, and for which the **Insured Person** has become legally obligated to pay on account of a **Claim** for a **Wrongful Act** first made against the **Insured Person** during the **Policy Period**, or the applicable Discovery Period pursuant to Section VIII, and reported to the **Insurer** in compliance with Section VII.

C. The **Insurer** shall pay on behalf of the **Company** all **Loss** that the **Company** shall be legally obligated to pay as a result of a **Claim** for a **Wrongful Act** first made against the **Company** during the **Policy Period**, or the applicable Discovery Period pursuant to Section VIII, and reported to the **Insurer** in compliance with Section VII.

D. The **Insurer** shall pay on behalf of the **Company** all **Derivative Demand Investigation Costs** incurred with the **Insurer's** prior written consent that the **Company** shall become legally obligated to pay as a result of a **Derivative Demand** first received by the **Company** during the **Policy Period**, or the applicable Discovery Period pursuant to Section VIII, for a **Wrongful Act** taking place before or during the **Policy Period**, and reported to the **Insurer** in compliance with Section VII.

Coverage for all **Derivative Demand Investigation Costs** shall not exceed the **Derivative Demand Investigation Costs** Sublimit of Liability set forth in Item D. of the Declarations.

Such Sublimit of Liability shall be the maximum amount that the Insurer shall pay under this Insuring Agreement for all **Derivative Demand Investigation Costs** covered under this Insuring Agreement.  Such Sublimit of Liability shall be subject to, part of, and not in addition to, the Aggregate Limit of this Policy set forth in the Declarations.  No Retention shall apply to this Insuring Agreement D.

**E.** The **Insurer** shall pay on behalf of the **Company** all **Crisis Management Expenses** incurred with the **Insurer's** written consent, which the **Company** shall become legally obligated to pay as a result of a **Crisis Event** first occurring during the **Policy Period** and reported to the **Insurer** in compliance with Section VII. This Insuring Agreement E. shall be subject to the Sublimit for **Crisis Management Expenses** set forth in the Declarations. The Sublimit for **Crisis Management Expenses** shall be the maximum amount that the **Insurer** shall pay under this Insuring Agreement for all **Crisis Management Expenses** from all **Crisis Events** covered under this Insuring Agreement. Such Sublimit shall be subject to, part of, and not in addition to, the Aggregate Limit of this Policy set forth in the Declarations. No Retention shall apply to this Insuring Agreement E.

## Section II.    Definitions

**A.** **"Affiliate"** shall mean (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, an **Insured**; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to an **Insured**.

**B.** "**Application**" shall mean each and every application submitted to the **Insurer** for consideration of this insurance together with any attachments to such applications, other materials submitted therewith or incorporated therein, and any other documents submitted in connection with the underwriting of this Policy. **Application** shall also mean any warranties submitted over the last three (3) years relating to any coverage for which this Policy is a renewal or replacement.

**C.** **"Claim"** shall mean

1) a written demand for monetary or other legal relief made against any **Insured** (including any request to toll or waive any statute of limitations);

2) a civil, administrative, regulatory or arbitration proceeding, against any **Insured Person** or the **Company** seeking monetary or non-monetary relief, including any proceeding or investigation by or before the U.S. Equal Employment Opportunity Commission ("EEOC") or any other federal, state or local governmental body, commenced by: a) the service of a complaint or similar pleading; or b) the filing of a notice of charges, investigative order or similar document;

3) a criminal investigation or proceeding initiated against any **Insured Person**, in their capacity as such, commenced by the return of an indictment, information or similar pleading in a criminal proceeding against such **Insured Person**;

4) except with respect to an **Employment Practices Claim**, any civil, criminal, administrative or regulatory investigation of an **Insured Person**,

   a) once such **Insured Person** is identified in writing by such investigating authority as the subject of an investigation that may lead to a criminal, civil, administrative, regulatory or other enforcement proceeding;

   b) in the case of an investigation by the Securities and Exchange Commission or other federal, state or foreign government authority, after the service of a subpoena or written "Wells" or

other notice from the Securities and Exchange Commission or other federal, state or foreign government authority;

5) solely with respect to Insuring Agreement A, and solely with respect to **Costs of Defense**, any written request or subpoena to interview or depose an **Insured Person** in his or her capacity as such or to produce documents by an **Insured Person**, provided such request or subpoena is not part of a regular examination, audit or inspection or part of a general oversight or compliance activity of the **Insured**;

6) solely for purposes of coverage afforded under Insuring Clause I. D, a **Derivative Demand**; or

7) a **Securities Claim**.

However, in no event shall the term "**Claim**" include any labor or grievance proceeding which is subject to a collective bargaining agreement, any government or regulatory audits or inspections or other routine compliance activities.

A **Claim** shall be deemed "made" at the time it is received by an **Insured**.

D. "**Company**" shall mean the entity or organization identified as the Named Insured in the Declarations and any **Subsidiary**, and in the event of a bankruptcy, shall include the **Company** and any **Subsidiary** as a debtor in possession, if any, as such term is used in Chapter 11 of the United States Bankruptcy Code.

E. "**Costs of Defense**" shall mean reasonable and necessary legal fees, costs and expenses incurred subject to Section VI, resulting solely from the investigation, defense or appeal of any **Claim** against an **Insured**, (including the costs of an appeal bond, attachment bond or similar bond but will not include the obligation to apply for or furnish such bonds). **Costs of Defense** shall not include any salaries, wages, overhead, benefits or benefit expenses associated with any **Insured**. **Costs of Defense** shall not include any fees, costs or expenses incurred prior to the date that a **Claim** is first reported to the **Insurer**. **Costs of Defense** will, however, include legal fees necessary to respond to a potential **Claim** identified under Section VII. B. if incurred at the **Insurer's** request and direction.

F. "**Crisis Event**" shall mean one of the following events which, in the good faith opinion of the Chief Financial Officer of the **Company**, did cause or is reasonably likely to cause damage to the public confidence in the **Company**:

1) *Negative earnings or sales announcement*

The public announcement of the **Company's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) the **Company's** prior year's earnings or sales for the same period, (ii) the **Company's** prior public statements or projections regarding earnings or sales for such period, or (iii) an outside securities analyst's published estimate of the **Company's** earnings or sales.

2) *Loss of a patent, trade mark or copyright or major customer or contract*

The public announcement of an unforeseen loss of: (i) the **Company's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of the **Company**; or (iii) a major contract with the **Company**.

3) *Product recall or delay*

The public announcement of the recall of a major product of the **Company** or the unforeseen delay in the production of a major product of the **Company**.

4) *Mass tort*

The public announcement or accusation that the **Company** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof. However, the term **Crisis Event** shall not include any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** or any event relating to the hazardous properties of nuclear materials.

5) *Employee layoffs or loss of key executive officer(s)*

The public announcement of employee layoffs, or the death or resignation of one or more key executive officer(s) of the **Company**.

6) *Elimination or suspension of dividend*

The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by the **Company**.

7) *Write-off of assets*

The public announcement that the **Company** intends to write off a material amount of its assets.

8) *Debt restructuring or default*

The public announcement that the **Company** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

9) *Bankruptcy*

The public announcement that the **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Company**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

10) *Governmental or regulatory litigation*

The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against the **Company**.

11) *Other*

Any other event specifically scheduled by written endorsement to the Policy.

It is a condition for coverage to apply to such **Crisis Event** that such specific event, circumstances or **Wrongful Act** has led, or in the absence of the incurring of **Crisis Management Expenses** might reasonably be expected to lead, to the publication of materially unfavorable information in a newspaper, magazine, or other written media of general circulation, or in a radio or television broadcast specifically regarding the **Company**.

A **Crisis Event** shall first commence when the **Company** or any of its **Executive Officers** shall first become aware of such **Crisis Event**. A **Crisis Event** shall conclude once a **Crisis Management Firm** advises the **Company** that such **Crisis Event** no longer exists or when the Sublimit for **Crisis Management Expenses** set forth in Item D. of the Declarations has been exhausted.

**G.** **"Crisis Management Expenses"** shall mean the following reasonable and necessary expenses first incurred by the **Company** with the **Insurer's** consent during a **Crisis Event**, or within sixty (60) days prior to and in anticipation of adverse publication relating to the **Crisis Event**, but in no event later than 12 months after the **Crisis Event** first begins:

1) the fees and expenses of a **Crisis Management Firm** to advise the **Company** on minimizing potential financial damage to the **Company** arising out of the actual or anticipated **Crisis Event**, including, but not limited to, maintaining and restoring public confidence in the **Company**; and

2) those costs incurred pursuant to the instructions of a **Crisis Management Firm** for printing, advertising (including television, print or other media) and mailing of materials specifically intended to inform or educate the general public about the **Crisis Event**.

**H.** **"Crisis Management Firm"** shall mean any public relations firm, crisis management firm or law firm listed in the Crisis Management Firm Panel List attached to this Policy or approved by the **Insurer**, to advise the **Company** on minimizing the potential financial damage to the **Company arising** out of the actual or anticipated **Crisis Event**.

**I.** "**Derivative Demand**" means a written demand by any security holder of the **Company**, in their capacity as such, upon the Board of Directors of the **Company** to investigate or bring a civil proceeding on behalf of, or in the name or the right of, the **Company** in a court of law against any of the **Directors and Officers** for a **Wrongful Act**, but only if such demand is made without the assistance, participation or solicitation of any **Executive Officer**.

**J.** **"Derivative Demand Investigation Costs"** shall mean reasonable and necessary costs, fees and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of the **Company** or the **Company's** overhead expenses) incurred by the **Company** (including its Board of Directors or any committee of its Board of Directors) solely with respect to an evaluation required to determine whether it is in the best interest of the **Company** to prosecute the claims alleged in a **Derivative Demand** and prior to any **Claim** first made in connection with such **Derivative Demand**. In no event shall **Derivative Demand Investigation Costs** include any costs, fees or expenses incurred in a **Claim**.

**K.** "**Directors and Officers**" shall mean all persons who were, now are, or shall be duly elected or appointed directors, officers, trustees or members of the board of managers of the **Company** and all persons serving in a functionally equivalent role for the **Company** if serving in such a position outside the United States.

**L.** "**Domestic Partner**" shall mean any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Company**.

**M.** **"Employee"** shall mean any past, present or future employee of the **Company** including any part-time, seasonal or temporary employee or any applicant for employment, solely in his or her capacity as such. Any person leased to the **Company** and any person hired by written contract to perform work for the **Company**, or who is an independent contractor for the **Company**, shall also be an **Employee**, but only if the **Company** indemnifies the person in the same

manner as is provided to the **Company**'s employees.

N. "**Employment Practices Claim**" shall mean any **Claim** brought by or on behalf of any **Employee** alleging an **Employment Practices Wrongful Act** or, if coverage is purchased as stated in Item D of the Declarations, any **Claim** alleging **Third Party Discrimination**.

O. "**Employment Practices Wrongful Act**" shall mean:

1) wrongful, excessive or unfair discipline  of an **Employee**;

1) wrongful failure or refusal to hire or promote or wrongful demotion;

2) abusive or hostile work environment;

3) violation of any federal, state or local law concerning discrimination in employment, including but not limited to the Americans with Disabilities Act of 1992; the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act of 1978, the Civil Rights Act of 1866, the Family and Medical Leave Act of 1993, the Older Workers Benefit Protection Act of 1990, the Equal Pay Act, the Lilly Ledbetter Fair Pay Restoration Act of 2009, or any rule or regulation promulgated thereunder, or any amendments thereto;

4) employment-related misrepresentations or omissions;

5) employment-related libel, slander, or defamation;

6) wrongful failure to grant tenure;

7) wrongful failure to provide an adequate employment policy or grievance procedure for **Employees**;

8) wrongful failure to provide training, mentoring, or advancement opportunities to an **Employee**;

9) negligent evaluation of an **Employee**;

10) **Retaliation** against an **Employee**;

11) harassment, including any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age or national origin-based harassment;

12) wrongful deprivation of career opportunity of an **Employee**, including defamatory statements made in connection with an **Employee** reference;

13) wrongful dismissal, discharge or termination of employment, whether actual or constructive;

14) negligent hiring, discipline, supervision or retention;

15) breach of any implied employment contract of an **Employee** who is not an **Executive Officer**;

16) wrongful infliction of emotional distress, mental anguish or humiliation;

17) wrongful failure or refusal to provide equal treatment or opportunities;

18) wrongful failure to promote, transfer or employ or wrongful demotion;

19) violation of the Uniformed Services Employment and Reemployment Rights Act;

20) violation of an **Employee**'s civil rights relating to any of the above;

but only if employment-related and claimed by or on behalf of an **Employee** in their capacity as such and only if committed or allegedly committed by any of the **Insureds** in their capacity as such.

P. "**Executive Officer**" shall mean any director of the **Company** as well as the chief executive officer, chief financial officer, general counsel or director of human resources, or equivalent position of any of the foregoing.

Q. "**Financial Insolvency**" shall mean the **Company** becoming a debtor in possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**. **Financial Insolvency** shall also mean the filing of a bankruptcy petition by or against the **Company** under the bankruptcy laws of the United States of America or any equivalent event outside the United States.

R. "**Insured**" shall mean any **Insured Person** and the **Company**.

S. "**Insured Person**" shall mean:

    1) **Directors** and **Officers**;

    1) **Employees** of the **Company**, other than those identified in S. 1) above, for whom the **Company** requests coverage at the time the **Claim** is made;

    2) any managing member or manager of any **Company** organized as a limited liability company;

    3) those persons serving in a functionally equivalent role as above for the **Company** or any **Subsidiary** operating or incorporated outside the United States;

    4) any individual identified above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent or governor, or in an equivalent executive position, of an **Outside Entity** in their capacity as such.

    5) any individual identified in S. 1), 3) or 4) above who, at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of a director, officer, member of Board of Managers, managing member or manager, regardless of the name or title by which such position is designated, of a **Joint Venture**.

T. "**Insurer**" shall refer to the Underwriters providing this insurance.

U. "**Joint Venture**" means any corporation, partnership, joint venture, association or other entity, other than a **Subsidiary**, at any time during which the **Company**, either directly or through one or more **Subsidiary(s)**:

    1) owns or controls at least thirty three percent (33%), but not more than fifty percent (50%), in the aggregate of the outstanding securities or other interests representing the right to vote for the election or appointment of those persons of such an entity occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of a director, officer, member of Board of Managers, managing member or manager of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

    1) has the right, by contract, ownership of securities or otherwise, to elect,

appoint or designate at least thirty three (33%) of those persons described in U.1) above.

**V.** "**Loss**" shall mean compensatory damages, statutory attorneys' fees, pre- and post-judgment interest, **Derivative Demand Investigation Costs** and **Costs of Defense**, in excess of the Retention. **Loss** shall also include, subject to the other terms, conditions and exclusions of this Policy, punitive or exemplary damages and the multiple portions of any multiplied damage award, judgments or settlements to the extent insurable under the law of any applicable jurisdiction most favorable to insurability.

**Loss** shall not include: (1) civil or criminal fines or penalties imposed by law; (2) taxes; (3) any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**; (4) employment-related benefits of any kind, including, but not limited to, stock, stock options, commissions, profit sharing, termination payments, severance, perquisites, deferred compensation or any other type of compensation other than back pay or front pay; (5) any liability or costs incurred by any **Insured** to modify any buildings or property in order to make a building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy, seminar or monitoring (including, but not limited to any consulting fees paid to any law firm) relating to or arising out of an **Employment Practices Claim**; (6) any portion of damages, judgments or settlements arising out of any **Claim** alleging that the **Company** paid an inadequate price or consideration for the purchase of securities or other ownership interest; (7) contractually owed amounts; (8) any disgorgement or restitution of ill-gotten gain or recessionary damages; or (9) matters which are uninsurable under the law pursuant to which this Policy shall be construed.

**W.** "**Management Control**" shall mean that the **Company** has either:

1) an ownership interest of more than fifty percent (50%) that entitles the **Company**; or

2) the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an organization

to elect, appoint or designate a majority of the Board of Directors of a corporation, the management committee of a **Joint Venture** or partnership or the management board of a limited liability company.

**X.** "**Outside Entity**" shall mean any not-for-profit entity classified as such by the Internal Revenue Code or any for-profit entity, but only if such for-profit entity is specifically added by written endorsement to this Policy.

**Y.** "**Policy Period**" shall mean the policy period as set forth in the Declarations, or its earlier termination if applicable.

**Z.** "**Pollutant**" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to:

1) smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, lead or materials containing lead, silica, radon, mold or asbestos;

2) hazardous, toxic or radioactive matter or nuclear radiation;

3) waste, which includes material to be recycled, reconditioned or reclaimed; or

One Company, One Focus - Managing Global Risk

4) any other pollutant as defined by applicable federal, state or local statutes, regulations, rulings or ordinances.

AA. "**Pollution**" shall mean the actual, alleged or threatened discharge, release, migration, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere. **Pollution** also means any direction request, demand, order, or state regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

BB. "**Related Wrongful Acts**" shall mean **Wrongful Acts** that arise from a common nucleus of facts, circumstances, situations, events or transactions, regardless of whether such **Wrongful Acts** are alleged by way of a single or multiple **Claim(s)** under this Policy or any other policy in effect prior to the inception of this **Policy Period**.

CC. "**Retaliation**" shall mean a **Wrongful Act** relating to or alleged to be in response to any of the following activities:

1) the disclosure or threat of disclosure by an **Employee** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

2) the actual or attempted exercise by an **Employee** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act, Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Occupational Safety and Health Act, or any other law relating to employee rights;

3) the filing of any claim under the Federal False Claims Act, the Sarbanes-Oxley Act of 2002 or any other federal, state, local or foreign "whistleblower" law; or

4) **Employee** strikes.

DD. "**Securities Claim**" shall mean any **Claim** made against an **Insured**, including a civil lawsuit or proceeding brought by the Securities and Exchange Commission, or by any similar state or foreign governmental or securities regulatory entity, alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

1) brought by any person or entity alleging, arising out of, based upon or attributable to the: (a) purchase or sale of, or (b) offer or solicitation of an offer to purchase or sell, any securities issued by the **Company**; or

2) brought by a security holder of the **Company**, arising solely with respect to such security holder's interest in such securities of the **Company**, whether directly, by class action or derivatively on behalf of the **Company**.

EE. "**Subsidiary**" shall mean:

1) any for-profit organization under the **Management Control** of the **Company**, either directly or indirectly, on or before the inception of the **Policy Period**;

2) automatically, any for-profit organization that comes under the **Management Control** of the **Company**, either directly or indirectly, during the **Policy Period**, provided that (1) the organization is not publicly

traded, 2) the number of employees of the organization is less than 25% of those of the **Company** (3) the assets of the organization are less than 25% of those of the **Company** and (4) the **Company** provides the **Insurer** with full particulars of the new **Subsidiary** before the end of the **Policy Period**;

3) any for-profit organization, other than those described in paragraph (2) above, that comes under the **Management Control** of the **Company**, either directly or indirectly, during the **Policy Period**, provided that the **Company** provides the **Insurer** with the full particulars of the new **Subsidiary** within 90 days of it becoming a **Subsidiary** and the **Company** pays such additional premium and accepts such policy amendments as the **Insurer** may reasonably require.

An organization shall become a **Subsidiary** only when the **Company** has acquired **Management Control**, either directly or indirectly, and shall cease to be a **Subsidiary** when the **Company** ceases to have **Management Control**. In all events, coverage as may be afforded under this Policy with respect to any **Subsidiary** or any **Insured Person**, in their capacity as such with a **Subsidiary**, shall only apply for **Wrongful Acts** that occur while the organization is a **Subsidiary**.

FF. **"Third Party Discrimination"** shall mean any actual or alleged discrimination, including harassment, or civil rights violation by an **Insured** against any non-**Employee**. However, **Third Party Discrimination** shall not include any actual or alleged price discrimination or violation of any anti-trust law or any similar law designed to protect competition or prevent unfair trade practices.

GG. "**Wrongful Act**" shall mean:

1) any actual or alleged act, omission, error, misstatement, misleading statement, neglect, or breach of duty, by any **Insured Person** in their capacity as such with the **Company**, including, if coverage is purchased as stated in the Declarations, any **Employment Practices Wrongful Act** or **Third Party Discrimination**;

2) any matter claimed against any **Insured Person** solely by reason of their capacity as such with the **Company**;

3) any matter claimed against any **Insured Person** arising out of their service as a director, officer, trustee or governor of an **Outside Entity**, but only if such service is at the specific request or direction of the **Company**; or

4) solely with respect to Insuring Agreement C., any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, or, if coverage is purchased as stated in the Declarations, any **Employment Practices Wrongful Act** and or **Third Party Discrimination**; by the **Company**.

## Section III.   Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A. alleging, arising out of, based upon, relating to, or attributable to:

1) an **Insured** gaining any profit, advantage, remuneration or financial advantage to which they were not legally entitled; provided however, this exclusion shall only apply if it is finally adjudicated that such conduct occurred or such **Insured** agrees to repay to the **Company** any such profit, remuneration or financial advantage;

2) any deliberate fraudulent or dishonest act or any willful violation of any statute, rule or law, or deliberate criminal acts of an **Insured**; provided however, this exclusion shall only apply if it is finally adjudicated that such conduct occurred; or

3) any profits in fact made from the purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provision of any similar state or foreign statutory law; provided, however, this exclusion shall only apply if a final adjudication establishes that such Section 16(b) violation occurred.

Provided, however,

a) Subject to all other Terms and Conditions of this Policy, Exclusion A. 1) shall not apply in a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations.

b) For the purpose of determining the applicability of Exclusion A. 1), 2) and 3), it is understood and agreed that:

(i) as respects coverage afforded under Sections I. A. and B, the **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person**; and

(ii) as respects coverage afforded under Section I. C., only the **Wrongful Act** of any past, present or future chief executive officer, chief operating officer, chairman, president or chief financial officer of the **Company** shall be imputed to the **Company**.

**B**. alleging, arising out of, based upon, relating to, attributable to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any **Claim** or notice of circumstance reported under any other policy of which this Policy is a renewal, replacement, or which this Policy may succeed in time.

**C**. alleging, arising out of, based upon, relating to, or attributable to any pending or prior written demand for monetary relief, civil, criminal, or administrative or investigative proceeding, or notice of charge of any kind, including any EEOC Charge, involving the **Company** and/or any **Insured Person** as of the Prior and Pending Litigation Date stated in Item G. of the Declarations, or any **Wrongful Act** or **Related Wrongful Acts** or any fact, circumstance or situation underlying or alleged in such proceeding or notice of charge.

**D**. for any actual or alleged:

1) bodily injury, sickness, disease, or death of any person;

2) damage to or destruction of any property, including the loss of use thereof; or

3)  mental anguish, emotional distress, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, libel or slander, however, this subsection D.3) does not apply to an **Employment Practices Claim**.

**E**. for any alleged violation of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act,  the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, and any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation** or an alleged violation of the Equal Pay Act.

**F**. for any alleged violation of any federal, state or local wage and hour law, including but not limited to:  the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in  connection with work related activities  (herein, "Earned Wages") (as opposed to tort-based or statutory back pay or front pay damages for discrimination), failure to provide or enforce legally required meal or rest break periods, for improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**, the failure to pay minimum wage or other underpayment of wages,  any unfair business practice claim or any tort arising out of the failure to pay Earned Wages, or any **Claim** seeking Earned Wages because any **Employee** or purported **Employee** was improperly classified or mislabeled as "exempt".

**G**. alleging, arising out of, based upon, relating to, or attributable to a **Wrongful Act** of any **Insured Person** serving in any capacity for any entity other than the **Company** or an **Outside Entity**, even if such service is at the direction of the **Company**, unless otherwise specifically added by written endorsement to this Policy.

**H**. for any **Wrongful Act** of any **Insured Person** serving as a director, officer, trustee or governor of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee or governor thereof; provided, however, this exclusion shall not apply to any **Employment Practices Claim**.

**I**. which is brought by or on behalf of the **Company** or by any **Insured Person**; or which is brought by any security holder or member of the **Company**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without solicitation of, or assistance of, or active participation of, or intervention of any **Insured Person**; provided however, this exclusion shall not apply to:

1) any **Employment Practices Claim** brought by or on behalf of an **Insured Person**;

2)  any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** that is covered by this Policy;

3) any **Claim** brought by the examiner, trustee, receiver, liquidator, rehabilitator or creditors' committee (or any assignee thereof) of the **Company**, in any bankruptcy proceeding by or against the **Company**;

4) any **Claim** brought by any past director or officer of the **Company** who has not served as a duly elected or appointed director, officer, trustee, governor,

management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of, or consultant for, the **Company** for at least three (3) years prior to such **Claim** being first made;

5) any **Claim** brought by a director or officer (or equivalent position) of a **Company** formed and operating in a foreign jurisdiction against such **Company** or any director or officer thereof, provided that such **Claim** is brought by the supervisory or any such similar board of a parent company chartered in such foreign jurisdiction; or

6) any **Claim** brought against an **Insured Person** for **Retaliation**.

**J.** alleging, arising out of, based upon, relating to, attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, **Pollution**, including but not limited to, any **Claim** for financial loss to the **Company**, its security holders or its creditors; provided, however, this exclusion shall not apply to **Securities Claims** otherwise covered under Section I. A. of this Policy.

**K.** for any **Wrongful Act** of a **Subsidiary** or an **Insured Person** of such **Subsidiary** or any entity that merges with the **Company** or an **Insured Person** of such entity that merges with the **Company** first occurring:

1) prior to the date such entity becomes a **Subsidiary** or is merged with the **Company**;

2) subsequent to the date such entity became a **Subsidiary** or was merged with the **Company** which, together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or was merged with the **Company**, would constitute **Related Wrongful Acts**; or

3) subsequent to the date the **Company** ceased to have, directly or indirectly, **Management Control** of such **Subsidiary**.

**L.** alleging, arising out of, based upon, relating to, or attributable to alleged liability under the Securities Act of 1933, the Securities Exchange Act of 1934 or any other or similar federal or state law, including but not limited to any **Claim** alleging, arising out of, based upon, relating to, or attributable to any public listing or offering of securities by the **Company**, an **Outside Entity** or an **Affiliate** or arising in connection with a purchase or sale of such securities subsequent to such public offering, including any ongoing reporting requirements under the Securities Exchange Act of 1934 or foreign equivalent; provided, this exclusion will not apply to:

1) any offering of securities exempted pursuant to section 3(b)(1) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; however, for this exception to apply, the **Company** shall give the **Insurer** written notice of any public offering exempted pursuant to section 3(b)(1), together with full particulars, as soon as practicable, but not later than 30 days after the effective date of the public offering;

1) any offering of securities exempted pursuant to section 4 of the Securities Act of 1933, including any offering pursuant to section 302(a) of the provisions of the Jumpstart Our Business Startups Act of 2012 ("Crowdfunding"), however, for this exception to apply, within 30 days prior to the effective time of such public offering: (i) the **Company** shall give the **Insurer** written notice of such public offering together with full particulars and underwriting information required thereto and (ii) the **Company** accepts such terms, conditions and additional premium required by the **Insurer** for such coverage. Such coverage

is also subject to the **Company** paying when due any such additional premium. In the event the **Company** gives written notice with full particulars and underwriting information pursuant to (i) above, then the **Insurer** must offer a quote for coverage under this paragraph;

2) any public offering of securities (other than a public offering described in paragraph 1) or 2) above), as well as any purchase or sale of such securities subsequent to such public offering, however, for this exception to apply, within 30 days prior to the effective time of such public offering: (i) the **Company** shall give the **Insurer** written notice of such public offering together with full particulars and underwriting information required thereto and (ii) the **Company** accepts such terms, conditions and additional premium required by the **Insurer** for such coverage. Such coverage is also subject to the **Company** paying when due any such additional premium. In the event the **Company** gives written notice with full particulars and underwriting information pursuant to (i) above, then the **Insurer** must offer a quote for coverage under this paragraph;

4) any **Claim** for **Loss** alleging a **Wrongful Act** which relates only to the **Insured's** preparations to commence an initial public offering ("IPO") , including any presentations made by the **Insured** and its **Executive Officers** via any medium in connection with such offering, if such public offering does not occur.

**L.** alleging, arising out of, based upon, relating to, or attributable to the purchase by the **Company** of securities of a "publicly traded entity" in a transaction which resulted, or would result, in such entity becoming an **Affiliate** or a **Subsidiary** of the **Company**; provided, however, this exclusion shall not apply in the event that within 30 days prior to it becoming an **Affiliate** or a **Subsidiary**, the **Named Insured** gives written notice of the transaction to the **Insurer** together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this Policy required by the **Insurer** relating to the transaction. Further, coverage shall be conditioned upon the **Named Insured** paying when due any additional premium required by the **Insurer** relating to the transaction. An entity is a "publicly traded entity" if any securities of such entity have previously been subject to a public offering;

**N.** alleging, arising out of, based upon, relating to, or attributable to emotional distress, mental anguish, or injury from libel, slander, defamation, or disparagement, or for injury from a violation of a person's right of privacy by the **Company**; provided, however, this exclusion shall not apply to injuries arising from an **Employment Practices Claim** brought by an **Employee**.

**O.** alleging, arising out of, based upon, or attributable to any:

1) payment, commission, gratuity, benefit or any other favor to or for the benefit of any full or part-time domestic or foreign government or any armed services official, agent, representative, employee or any member of their family or any entity with which they are affiliated; or

2) payment, commission, gratuity, benefit or any other favor to or for the benefit of any full or part-time official, director, agent, partner, representative, principal shareholder, or owner or employee, or "affiliate" (as that term is defined in The Securities Exchange Act of 1934, including any officer, director, agent, owner, partner, representative, principal shareholder or employee of such affiliate) of

any customer of the **Company** or any member of their family or any entity with which they are affiliated; or

3) political contribution, whether domestic or foreign.

**P.** alleging, arising out of, based upon, relating to, or attributable to, or directly or indirectly resulting from, or in consequence of, or in any way involving, any obligation pursuant to any worker's compensation, medical benefits, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law, including any medical or insurance benefits to which an **Employee** allegedly was entitled or would have been entitled had the **Company** provided the **Employee** with a continuation or conversion of insurance, provided however, this exclusion shall not apply to a **Claim** for **Retaliation**.

**Q.** Solely with respect to Insuring Agreement C:

1) for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

2) for the rendering or failure to render any service to a customer or client of the **Insured**; provided, however, that this exclusion shall not apply to any:

   (i) **Claim** alleging **Third Party Discrimination**;

   (ii) **Claim** for the rendering or failure to render any professional service to the extent such professional services errors and omissions coverage has been added to this **Policy** by written endorsement attached hereto;

3) based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving amounts actually or allegedly owed under any written or express contract with the **Company**, including any severance obligation of the **Company**; provided, however, this exclusion shall not apply if and to the extent that liability would have attached to the **Insureds** in the absence of a contract or obligation of the **Company**;

4) alleging, arising out of, based upon, or attributable to any price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities;

5) based upon, arising out of or in any way involving the actual or alleged malfunction, defect or failure of any goods or products manufactured, distributed, sold, installed, marketed, developed or processed by the **Company**; provided this exclusion shall not apply to any **Securities Claim** or **Employment Practices Claim**;

6) for any fines, penalties or other legal relief or any taxes owed; or

7) alleging, arising out of, based upon or attributable to the ownership, management, maintenance or control by the **Company** of any captive insurance company or entity, or self insured program, including, but not limited, to any **Claim** alleging the insolvency or bankruptcy of the **Company** as a result of such ownership, operation, management or control or the failure to procure any insurance coverage.

## Section IV. Limit of Liability

**A.** The **Insurer** shall be liable to pay **Loss** resulting from a covered **Claim** in excess of the applicable Retention amount stated in Item E. of the Declarations, up to the applicable Limit of Liability stated in Item D. of the Declarations. The **Insurer's** maximum liability for all **Loss** on account of all **Claims** combined, including **Costs of Defense**, shall be the Aggregate Limit set forth in the Declarations. Under no circumstances shall the **Insurer** be responsible to pay any **Loss**, including **Costs of Defense**, in excess of the Aggregate Limit.

**B.** If Separate Limits of Liability or Sublimits are stated in the Declarations, then each such Separate Limit or Sublimit shall be the maximum amount of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the Policy Period, or the Discovery Period (if applicable), with respect to the type of **Loss** to which the Separate Limit or Sublimit applies. Each Separate Limit or Sublimit shall be part of, and not in addition to, the Aggregate Limit for all **Loss** under this Policy and shall in no way serve to increase the Aggregate Limit for all **Loss**.

If Shared Limits are stated in the Declarations, then each such Shared Limit shall be the maximum amount of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period**, or the Discovery Period if applicable, with respect to all **Loss** to which such Shared Limit of Liability applies. Each Shared Limit shall be part of, and not in addition to, the Aggregate Limit.

If a single **Claim** is covered in whole or in part under more than one Shared Limit, Separate Limit or Sublimit, the maximum amount of the **Insurer's** liability for all **Loss**, combined, on account of such **Claim** shall not exceed the larger(est) of such applicable Shared Limit, Separate Limit or Sublimit, subject to reduction through any prior payments of **Loss** under such applicable Limit or Sublimit. Under no circumstance shall the **Insurer** be responsible to pay any Loss, including **Costs of Defense**, in excess of the Aggregate Limit.

All **Related Wrongful Acts** that, pursuant to Section VII of this Policy, are considered made or received during the Policy Period or Discovery Period (if applicable), shall also be subject to the applicable Limits of Liability set forth in this Policy. Each of the Limits of Liability for the Discovery Period (if applicable) shall be part of, and not in addition to, each of the corresponding Limits of Liability for the **Policy Period**.

**C.** **Costs of Defense** shall be part of, and not in addition to, the Limit of Liability stated in Item D. of the Declarations, including but not limited to the Limits of Liability described as Shared, Separate or Sublimits. Such **Costs of Defense** shall serve to reduce and may totally exhaust the Limit of Liability. If the applicable Limit of Liability is exhausted by payment of **Loss**, the **Insurer's** obligations, including without limitation any duty to defend, shall be completely fulfilled and extinguished.

## Section V. Retention

**A.** The applicable Retention specified in Item E. of the Declarations shall be a condition precedent, and must be paid by the **Company**, before the **Insurer** has any payment obligation, and shall apply to all covered **Loss**, including **Costs of Defense**.

**B.** The Retention specified in Item E. of the Declarations shall apply as follows:

1) The Each **Claim** Retention is applicable to **Loss** as a result of **Claims** other than an **Employment Practices Claim** or a **Securities Claim**.

2) The Each **Claim** alleging an **Employment Practices Wrongful Act** Retention is applicable to **Loss** resulting from each **Claim** for **Employment Practices Wrongful Act**.

3) The Each **Claim** alleging **Third Party Discrimination** Retention is applicable to **Loss** resulting from each **Claim** alleging **Third Party Discrimination**.

4) The Each **Securities Claim** Retention is applicable to **Loss** resulting from a **Securities Claim**.

5) Except as provided hereinafter, no Retention shall apply to **Loss**, including **Costs of Defense**, under Insuring Agreements I A, D or E.

6) In the event a **Claim** triggers more than one Retention specified in Item E. of the Declarations, the applicable Retention to such **Claim** shall be the single highest Retention applicable to such **Loss**.

**C.** One Retention shall apply to **Loss** arising from each **Claim** alleging the same **Wrongful Act** or **Related Wrongful Acts**. The **Company** shall be responsible for any amount within the Retention.

**D.** More than one **Claim** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim,** and only one Retention and one Limit of Liability shall be applicable to such single **Claim**. All such **Claims** constituting a single **Claim** shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which the notice of circumstance involving any such **Wrongful Act** or **Related Wrongful Acts** was reported under this Policy or any other policy providing similar coverage.

**E.** For the purposes of the application of the Retention, the Retention applicable to Insuring Agreement 1.B shall apply to **Loss** applicable to Insuring Agreement I.A. with respect to any **Claim** for which indemnification is legally permissible under the broadest interpretation of the applicable law and the **Company's** bylaws. The certificate of incorporation, charter or other organization documents of the **Company**, including by-laws and resolutions, shall be deemed to require indemnification and advancement of **Loss** of an **Insured Person** to the fullest extent permitted by law. Notwithstanding the foregoing, in the event the **Company** is unable to indemnify an **Insured Person** solely by reason of its **Financial Insolvency**, the **Insurer** shall, pursuant to the terms and conditions of Section VI.F., advance **Costs of Defense** incurred by an **Insured Person** without first requiring payment of the Retention applicable to **Claims** for which the Retention of Insuring Agreement I.B applies. In the event the **Company** is otherwise permitted or required to indemnify an **Insured Person**, the **Insurer** may in its sole discretion, but is not required to, advance **Costs of Defense**, pursuant to the terms and conditions of Section VI.F, incurred by an **Insured Person** without first requiring payment of the Retention applicable to **Claims** for which the Retention applicable to Insuring Agreement I.B applies.

## Section VI.   Costs of Defense and Settlements

**A**. The **Insured** shall not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld. The **Insured** shall provide the **Insurer** with all information, documents, reports and particulars it may reasonably request in order to reach a decision as to such consent.  Any **Loss** resulting from any admission of liability, agreement to settle, default judgment, or **Costs of Defense** incurred without the consent of the **Insurer**, shall not be covered hereunder.

**B**. Notwithstanding Section VI.A. above, if all **Insureds** are able to settle all **Claims** that are subject to an applicable Retention for an amount that, together with the **Costs of Defense**, does not exceed the applicable Retention, the **Insured** may agree to such a settlement without the prior written consent of the **Insurer**, provided, however, nothing in this paragraph shall relieve any **Insured** of its obligation to report a **Claim** in compliance with Section VII.

**C**. The **Insured**, and not the **Insurer**, shall have the duty to defend all **Claims**, provided that the **Insured** shall only retain **Defense Counsel** as is mutually agreed in writing with the **Insurer**.  **Costs of Defense** will only be paid if the written consent of the **Insurer** is obtained prior to the **Company** incurring such **Costs of Defense**.

"**Defense Counsel**" shall mean an attorney approved by the **Insurer** in writing from the jurisdiction in which the **Claim** is brought, or alternatively, counsel, who will be paid at rates regularly paid by the **Insurer** to attorneys retained by it in the ordinary course of business in the jurisdiction where the **Claim** is being defended.  If the **Insured** does not obtain the written consent of the **Insurer** as to its selected counsel, then the fees incurred will be at the **Company's** expense.

With the express prior written consent of the **Insurer**, an **Insured** may select (in the case of the **Insured** defending the **Claim**), or cause the **Insurer** to select (in the case of the **Insurer** defending the **Claim**), **Defense Counsel** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest or is otherwise reasonable and necessary.

**D**. The **Company** may at its option tender to the **Insurer** the defense of a **Claim**; however in no event shall such tender of the defense relieve the **Company** of its obligation to pay the applicable Retention in connection with the **Claim**.  Upon such a tender of the defense of a **Claim**, the **Insurer** shall assume the duty to defend.  Such a tender of the defense of a **Claim** may not be made more than 30 days following notice of the **Claim**, or if greater than 30 days, solely at the discretion of the **Insurer**.

**E**. The **Insurer** shall advance covered **Costs of Defense** on a current basis.  Any advancement of **Costs of Defense** shall be repaid to the **Insurer** by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled under the terms and conditions of this Policy for such **Costs of Defense**.  Any payment shall be on the condition that:

1) the appropriate Retention has been satisfied by covered **Loss** under the Policy, provided, however, this condition shall not apply in the event of the **Financial Insolvency** of the **Company**;

2) any amounts paid by the **Insurer** shall serve to reduce the Limit of Liability stated in the LIMITS OF INSURANCE section of the Declarations to the extent they are not in fact repaid;

3) the **Insured** and the **Insurer** have agreed upon the portion of the **Costs of Defense** attributable to covered **Claims** against the **Insureds**; provided, however, if no agreement, the **Insurer** shall pay **Costs of Defense** as specified in Section VI. G.

F. The **Insurer** shall at all times have the right, but not the duty, to fully and effectively associate with the **Insured** in the investigation, defense or settlement of any **Claim** to which coverage under this Policy may apply. The **Insured** shall cooperate with the **Insurer** and provide the **Insurer** such information as it may reasonably require in the investigation, defense or settlement of any **Claim**. In addition, the **Insured** shall not take any action, without the **Insurer's** written consent, which prejudices the **Insurer's** rights under this Policy.

G. If a **Claim** made against an **Insured** includes both covered and uncovered matters, or is made against an **Insured** and others not insured, the **Insured** and the **Insurer** recognize that there must be an allocation between covered and uncovered **Loss**. The **Insured** and the **Insurer** shall use their best efforts to agree upon a fair and proper allocation between covered and uncovered **Loss**, taking into account the relative legal and financial exposures, and the relative benefits obtained by each **Insured** as a result of the covered and uncovered matters and/or such benefits to an uninsured party using the same measure. If the **Insured** and the **Insurer** are unable to agree on the amount of the allocation, then the **Insurer** shall pay only those amounts (excess of the Retention amount) which the **Insurer** deems to be fair and equitable until a different amount shall be agreed upon or determined pursuant to the terms of this Policy and the above stated standards.

H. The **Insurer** will have no obligation to pay **Loss**, including **Costs of Defense**, or to defend or continue to defend any **Claim** under any Insuring Agreement or endorsement after the applicable Limit or the Aggregate Limit set forth in Item D. of the Declarations is exhausted by the payment of **Loss**, including **Costs of Defense**.

It is understood and agreed that the **Company** shall be entitled to payment under Section I. D for reimbursement of its covered **Derivative Demand Investigation Costs** ninety (90) days after: (i) the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Directors and Officers**, and (ii) such decision has been communicated to the shareholders who made the **Derivative Demand** upon the **Company**. However, such payment shall be subject to an written undertaking by the **Company**, in a form acceptable to the **Insurer**, that the **Company** shall return to the **Insurer** such payment in the event any **Company** or any shareholder of the **Company** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand**.

## Section VII.   Notice of Claim

A. The **Insured** shall, as a condition precedent to their rights under this Policy, give the **Insurer** notice in writing of any **Claim** which is made during the **Policy Period** or Discovery Period. Such notice shall be given as soon as practicable upon knowledge of the chief executive officer, chief financial officer, general counsel, director of human resources, risk manager, or equivalent position of any of the foregoing,     but in no event later than 1) sixty (60) days after the end of the

**Policy Period** or 2) the expiration date of the Discovery Period, if applicable. If notice is provided pursuant to this Section, any **Claim** subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the prior noticed **Claim** or alleging any **Related Wrongful Acts**, shall be considered related to the prior **Claim** and made at the time notice of the prior **Claim** was first provided.

B. If during the **Policy Period** the **Company** or any **Insured** becomes aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Related Wrongful Acts**, shall be considered made at the time notice of such circumstances was given. Notice of any such subsequent **Claim** shall be given to the **Insurer** as soon as practicable.

C. In addition to furnishing the notice as provided in Section VII, the **Insured** shall, as soon as practicable, furnish the **Insurer** with copies of reports, investigations, pleadings and other papers in connection therewith.

D. Notice to the **Insurer** as provided in Section VII shall be given to the **Insurer's** representative identified in, and at the address set forth in Item H. of the Declarations, Notices to Insurer.

## Section VIII. Discovery Period

A. In the event the **Insurer** or the **Company** refuses to renew this Policy, the **Company** shall have the right, upon payment of one hundred percent (100%) of the annual premium, (or if the **Policy Period** is other than annual, one hundred percent (100%) of the annualized premium), to an extension of the coverage provided by this Policy with respect to any **Claim** first made against any **Insured** during the period of twelve (12) months after the end of the **Policy Period** and reported to the **Insurer** pursuant to the provisions of this Policy, but only with respect to any **Wrongful Act** committed or alleged to have been committed before the end of the **Policy Period**. This twelve (12) month period shall be referred to in this Policy as the Discovery Period.

B. As a condition precedent to the right to purchase the Discovery Period, the total premium for this Policy, including any additional premiums for changes or additions to the Policy, must have been paid and a written request, together with payment of the appropriate premium for the Discovery Period, must be provided to the **Insurer** no later than thirty (30) days after the end of the **Policy Period**, at which time the premium shall be deemed fully earned.

C. The fact that the coverage provided by this Policy may be extended by virtue of the purchase of the Discovery Period shall not in any way increase the Aggregate Limit of Liability stated in Item D of the Declarations. For purposes of the Limit of Liability, the Discovery Period is considered to be part of, and not in addition to, the **Policy Period**.

## Section IX. General Conditions

A. **Cancellation**

1) This Policy may be cancelled by the **Company** at any time by written notice to the **Insurer**. Upon cancellation by the **Company**, the **Insurer** shall retain the customary short rate portion of the premium, unless this Policy is converted to Run-Off pursuant to Section IX.D. wherein the entire premium for this Policy shall be deemed earned.

2) This Policy may only be cancelled by the **Insurer** if the **Company** does not pay the premium when due.

B. **Application**

It is agreed by the **Company** and the **Directors and Officers** that the particulars and statements contained in the **Application** and any information provided therewith (which shall be on file with the **Insurer** and be deemed attached hereto as if physically attached hereto) are true, accurate and complete and that such particulars and statements are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Company** and the **Insured Person(s)** that the statements in the **Application** or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations. Knowledge of any **Insured Person** of a misstatement or omission in the **Application** shall not be imputed to any other **Insured Person** for purposes of determining the validity of this Policy as to such other **Insured Person**, against whom this Policy shall not be rescinded. Only knowledge of the chairman of the board, chief executive officer, chief operating officer, president, chief financial officer, general counsel, director of human resources or equivalent position or risk manager of a misstatement or omission in the **Application** shall be imputed to the **Company** for purposes of determining coverage under this Policy as respects Section I. C.

C. **Action Against the Insurer**

1) No action shall be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the obligation of the **Insured** to pay shall have been finally determined by an adjudication against the **Insured** or by written agreement of the **Insured**, claimant and the **Insurer**.

2) No person or organization shall have any right under this Policy to join the **Insurer** as a party to any **Claim** against an **Insured** nor shall the **Insurer** be impleaded by any **Insured** or their legal representative in any such **Claim**.

D. **Conversion to Run-Off Coverage**

If, during the **Policy Period**, a transaction occurs wherein another entity gains control of the **Company** identified as the Named Insured in the Declarations through the ownership of more than fifty percent (50%) of the voting stock of the **Company**, or the **Company** merges into another entity or consolidates with another entity such that the **Company** is not the surviving entity, then:

1) this Policy shall only apply to **Wrongful Acts** actually or allegedly committed on or before the effective date of such transaction; and

2) this Policy shall be non-cancellable except for non-payment of premium, and

3) the entire premium for this Policy shall be deemed earned as of the date of such transaction.

E. **Outside Entity and Joint Venture Provision**

In the event a **Claim** is made against any **Insured Person** arising out of their service as a director, officer, trustee or governor of an **Outside Entity** or **Joint Venture**, coverage as may be afforded under this Policy shall be excess of any indemnification provided by the **Outside Entity** or **Joint Venture** and any insurance provided to the **Outside Entity** or **Joint Venture** which covers its directors, officers, trustees or governors.

**F. Other Insurance**

All amounts payable under this Policy will be specifically excess of, and will not contribute with, any other valid and collectible insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy.

**G. Coverage Extensions**

1) Lawful Spouse or **Domestic Partner** Provision

   The coverage provided by this Policy shall also apply to the lawful spouse or **Domestic Partner** of an **Insured Person**, but only for a **Claim** arising out of any actual or alleged **Wrongful Acts** of such **Insured Person**.

2) Worldwide Provision

   The coverage provided under this Policy shall apply worldwide. The term **Directors and Officers** is deemed to include individuals who serve in equivalent positions in foreign **Subsidiaries**.

3) Estates and Legal Representatives

   a) The coverage provided by this Policy shall also apply to the estates, heirs, legal representatives or assigns of any **Insured Person** in the event of their death, incapacity or bankruptcy, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of any **Insured Person**.

   b) In the event a bankruptcy proceeding shall be instituted by or against the **Company**, the resulting debtor-in-possession (or equivalent status outside the United States of America) shall be deemed to be the **Company**, but only with respect to coverage provided under Insuring Agreements I. B. and C.

**H. Priority of Payments**

1) In the event of **Loss** arising from one or more covered **Claims**, **Derivative Demands or Crisis Events** for which payment is due under this Policy, the **Insurer** shall:

   a) first pay such **Loss** for which coverage is provided under Section I. A of this Policy; then

   b) with respect to whatever remaining amount of the Limit of Liability is available after payment of Section I.A. above, pay such **Loss** for which coverage is provided under any other Insuring Agreements of this Policy.

2) Subject to the provisions of paragraph 1) above, the **Insurer** shall, at the request of the **Company**, delay payment of **Loss** for which coverage is

provided under any Insuring Agreement other than Section I.A. until such time as the **Company** designates; provided the liability of the **Insurer** with respect to such delayed payment shall not be increased, and shall not include any interest as a result of such delay. The **Company** shall provide written notice to the **Insurer** when such delayed payment shall be made. Such written notice shall be deemed consent from all **Insureds**, including all **Insured Person(s)**, to release such payment and the **Insurer** shall have no further obligation under this Policy with respect to such funds.

**I. Subrogation**

In the event of any payment under this Policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Company's** and any other **Insured's** rights of recovery thereof, and the **Company** and the **Insured** shall execute all papers required and shall do everything that may be reasonably necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of the **Company** or any other **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured Person** under this Policy unless a final adjudication or binding arbitration adverse to the **Insured Person** in the underlying proceeding establishes that such **Insured Person** committed a deliberate criminal or deliberate fraudulent act, or such **Insured Person** has been determined, upon a final adjudication or binding arbitration adverse to the **Insured Person**, to have obtained any profit or advantage to which such **Insured Person** was not legally entitled.

**J. Choice of Law**

All matters arising hereunder including questions related to the validity interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York notwithstanding New York's conflicts of law rules.

**K. Assignment**

This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**, which consent shall be in the sole and absolute discretion of the **Insurer**.

**L. Company Represents Insureds**

By acceptance of this Policy, the **Insureds** agree that the **Company** identified as the Named Insured in the Declarations shall be designated to act on behalf of all **Insureds** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, the election or failure to elect a Discovery Period, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

**M. Representative of the Insurer**

ANV Global Services, Inc., (200 Hudson Street , Suite 800, Jersey City, NJ 07311) shall act on behalf of the **Insurer** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, provided, however, notice of **Claims** shall be given pursuant to Section VII of the Policy.

**N. Bankruptcy**

Bankruptcy or insolvency of the **Company**, or any **Insured Person** shall not relieve the **Insurer** of any of its obligations under this Policy.

**O. Conformity to Statute**

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

**P. Headings**

The descriptions in the headings of this Policy form no part of the terms and conditions of the coverage under this Policy.

**Q. Entire Agreement**

By acceptance of this Policy, all **Insureds** and the **Insurer** agree that this Policy (including the Declarations, **Application** submitted to the **Insurer** and any information provided therewith) and any written endorsements attached hereto constitute the entire agreement between the parties. The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement.

**R. Dispute Resolution**

In the event any dispute between the **Insured** and the **Insurer** arises in connection with this Policy that cannot be resolved by agreement, prior to commencing a judicial proceeding or arbitration, the **Insured** may submit the dispute to non-binding mediation. The parties shall select a mediator from the JAMS Panel of Neutrals, unless otherwise agreed upon. The **Insurer** and the **Insured** shall attempt in good faith to resolve such dispute in accordance with the American Arbitration Association's ("AAA") then-prevailing Commercial Mediation Rules. In the event the **Insured** does not elect to engage in non-binding mediation or such non-binding mediation does not result in a settlement of the subject dispute or difference, either the **Insured** or the **Insurer** shall have the right to commence a judicial proceeding or, if the parties agree, a binding arbitration under the then-prevailing AAA Commercial Arbitration Rules, to resolve such dispute no earlier than sixty (60) days after such mediation concludes unsuccessfully. The **Company** shall act on behalf of each and every **Insured** in deciding whether to proceed with either a judicial proceeding or binding arbitration. The costs and expenses of mediation, or arbitration, shall be split equally by the parties.

**S. Service of Suit**

The **Insurer's** representatives designated in Section IX, (M) are authorized and directed to accept service of process on behalf of the **Insurer** in any suit on the Policy against the **Insurer**. The service of process in any **Claim** or suit on the Policy against the **Insurer** may also be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the Policy is issued. The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the Policy is issued is hereby authorized and directed to accept service of process on our behalf in any such **Claim** or suit. Said officer is authorized to mail such process or a true copy thereof to the **Insurer's** representatives designated in Section IX (M).

# *Insured Education Document*

## Representative of the Insurer

ANV Global Services, Inc., (200 Hudson Street , Suite 800, Jersey City, NJ 07311) shall act on behalf of the Insurer for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, provided, however, notice of Claims shall be given pursuant to Section VII of the Policy.

## Insurer

This Policy is underwritten by Amtrust Underwriters, Inc on behalf of Associated Industries Insurance Company, Inc.

## Law

All matters arising hereunder including questions related to the validity interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York notwithstanding New York's conflicts of law rules.

## Queries

Any query or question about this Policy or any claim under it should be addressed in the first instance to your broker.

## Complaints

ANV aims to provide a professional service to its customers. Should you have any questions or concerns about your Policy or the handling of a Claim you should, in the first instance, contact your broker.  If your broker does not provide you with a satisfactory response, please contact ANV Global Services, Inc., at 200 Hudson Street, Suite 800, Jersey City, NJ 07311, email: PLUnderwriting@anv.us.com or for any Claims matters, Attn: Claims Department at the same address.  The Claims Department email is: MGAClaims@anv.us.com.  In the event that you remain dissatisfied and wish to make a complaint, please contact ANV´s compliance department at anvcomplaintsMGU@anv.eu.com.



Endorsement No:  1                                    Policy Number:  ANV137167A

Named Insured:   Avadim Health, Inc.

Endorsement Effective Date:   February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**EXCESS PROFESSIONAL LIABILITY POLICY**
**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**SIDE-A DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that this policy is amended as follows:

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ANV PL 0028 Rev 09.19 - Cap On Losses From Certified Acts of Terrorism                Page **1** of 1



Endorsement No: 2

Policy Number: ANV137167A

Named Insured: Avadim Health, Inc.

Endorsement Effective Date: February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully**.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site — http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

ANV PL 0102 Rev 04.14 - U.S. Treasury Department OFAC Advisory Notice                    Page **1** of **1**



Endorsement No:  3

Policy Number:  ANV137167A

Named Insured:  Avadim Health, Inc.

Endorsement Effective Date:  February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND COSTS OF DEFENSE AND SETTLEMENT**

This endorsement modifies insurance provided under the following:

**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**

In consideration of the premium charged, Section VI, Costs of Defense and Settlement is amended to add the following:

**I**.  If the **Insurer** recommends a settlement within the Policy's applicable Limit of Liability as stated in Item D. of the Declarations, which is acceptable to the claimant, but the **Insured** does not consent to such settlement within thirty (30) days of the date the **Insured** is first made aware of the potential settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (i) the amount for which the **Insurer** could have settled such **Claim** plus **Costs of Defense** incurred as of the date the potential settlement was proposed in writing by the **Insurer** to the **Insured** and (ii) 60% of all subsequent covered **Loss** in excess of such amount, the remaining 40% of which shall be borne by the **Insured** uninsured and at their own risk.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ANV PL 0149 Rev 05.16 - Amend Cost of Defense and Settlement                                         Page **1** of **1**



Endorsement No:  4                                 Policy Number:  ANV137167A

Named Insured:  Avadim Health, Inc.

Endorsement Effective Date:  February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ABSOLUTE BODILY INJURY AND PROPERTY
DAMAGE EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that **Section III**. **EXCLUSIONS**, **D.** is deleted in its entirety and replaced with the following:

    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly,
1)    bodily injury, sickness, disease, or death of any person;
2)    damage to or destruction of any property, including the loss of use thereof; or
3)    mental anguish, emotional distress, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, libel or slander, however, this subsection D.3) does not apply to an **Employment Practices Claim**.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ANV PL 0010 Rev 04.14 - Absolute Bodily Injury And Property Damage Exclusion                Page **1** of **1**



Endorsement No:  5                                        Policy Number:  ANV137167A

Named Insured:   Avadim Health, Inc.

Endorsement Effective Date:   February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EMPLOYMENT PRACTICES CLAIMS-DUTY TO DEFEND**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**

It consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that solely with respect to any **Employment Practices Claim** which is not, in whole or in part, excluded from coverage pursuant to Section III, Exclusions, Subsection F, the Policy is amended as follows:

1. Section VI, Costs of Defense and Settlement, Subsections D and E are deleted in their entirety.

2. Section VI, Costs of Defense and Settlement, Subsection C, F and G are deleted in their entirety and replaced with the following:

C. The **Insurer**, and not the **Insured**, shall have the duty to defend all **Claims**. The **Insurer's** duty to defend any **Claim** shall cease when the Limits of Liability have been exhausted by the payment of **Loss** including **Costs of Defense**.

F. The **Insurer** shall have the right and shall be given the opportunity to effectively associate with the **Insured** regarding the defense and negotiation of any settlement of any **Claim**. The **Insured** agrees to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim**, the **Insured** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery. The **Insurer** may make any investigation it deems necessary.

G. If a **Claim** made against an **Insured** includes both covered and uncovered matters, or is made against an **Insured** and others not insured, the **Insured** and the **Insurer** recognize that there must be an allocation between covered and uncovered **Loss** (with the exception of **Costs of Defense**).  The **Insured** and the **Insurer** shall use their best efforts to agree upon a fair and proper allocation between covered and uncovered **Loss**, taking into account the relative legal and financial exposures, and the relative benefits obtained by each **Insured** as a result of the covered and uncovered matters and/or such benefits to an uninsured party using the same measure.  If the **Insured** and the **Insurer** are unable to agree on the amount of the allocation, then the **Insurer** shall pay only those amounts (excess of the Retention amount) which the **Insurer** deems to be fair and equitable until a different amount shall be agreed upon or determined pursuant to the terms of this Policy and the above stated standards.

ANV PL 0135 Rev 10.15 - Employment Practices Claims-Duty To Defend                    Page **1** of **2**

**3**. Section VI, Costs of Defense and Settlement is amended to add the following:

**I**.  If the **Insurer** recommends a settlement within the Policy's applicable Limit of Liability as stated in Item D. of the Declarations, which is acceptable to the claimant, but the **Insured** does not consent to such settlement within thirty (30) days of the date the **Insured is** first made aware of the potential settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (i) the amount for which the **Insurer** could have settled such **Claim** plus **Costs of Defense** incurred as of the date the potential settlement was proposed in writing by the **Insurer** to the **Insured** and (ii) 60% of all subsequent covered **Loss** in excess of such amount, the remaining 40% of which shall be borne by the **Insured** uninsured and at their own risk.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.



Endorsement No: 6                                    Policy Number:   ANV137167A

Named Insured:   Avadim Health, Inc.

Endorsement Effective Date:   February 28, 2021

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PRODUCT LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** alleging, arising out of, based upon or attributable to the use, effects or treatment of any product developed, handled, sold or manufactured by the **Insured**, including, but not limited to, the rendering of or failure to render, or promotion of or failure to promote, advice as to when or how a product should be used and its possible effects, or any other medical or healthcare advice or treatment.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ANV PL 0083 Rev 04.14 - Product Liability Exclusion                                    Page **1** of **1**



Endorsement No:  7                                      Policy Number:  ANV137167A

Named Insured:   Avadim Health, Inc.

Endorsement Effective Date:   February 28, 2021

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## DEDICATED EXECUTIVE LIMIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**

| Executive Limit of Liability | $500,000 |
| --- | --- |

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the policy is amended as follows:

For the purpose of this endorsement, the term "**Executive**" means any past, present, or future **Director** or **Officer** of the **Company** and those persons serving in a functionally equivalent role for the **Company** or any **Subsidiary** operating or incorporated outside the United States.

Notwithstanding anything to the contrary in this Policy, the **Executives** shall have available an additional Limit of Liability ("**Executive Limit of Liability**") as shown in the schedule above which is in addition to and not part of the Limits of Liability set forth in the Item D of the Declarations.  This **Executive Limit of Liability** is available solely for **Loss**, including **Costs of Defense**, resulting from any **Claim** under **Insuring Agreement I A**.  The **Executive Limit of Liability** shall be excess of any insurance available that is specifically excess of this Policy and such excess insurance must be completely exhausted by payment of loss, damages or **Costs of Defenses** thereunder before the Insurer shall have any obligations to make any payment on account of the **Executive Limit of Liability**.

"**Directors**" and "**Officers**" shall mean all persons who were, now are, or shall be duly elected or appointed directors and/or officers of the **Company**.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ANV PV 0035 Rev 04.14 - Dedicated Executive Limit Endorsement                    Page **1** of **1**



Endorsement No: 8                                   Policy Number: ANV137167A

Named Insured: Avadim Health, Inc.

Endorsement Effective Date: February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DEFENSE ONLY LIMIT**

This endorsement modifies insurance provided under the following:

**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that an additional Limit of Liability shall apply solely for coverage of **Costs of Defense** (referred to as the "**Defense Only Limit**" and as set forth in the schedule shown below).

| **Defense Only Limit:** | $ 500,000 |
| --- | --- |

The **Defense Only Limit** shall apply to **Costs of Defense** in the first instance, leaving the original Limit of Liability as indicated in Item D of the Declaration, to apply second to:
1.  **Costs of Defense** incurred in excess of, and after exhaustion of, the Defense Only Limit and/or
2.  any other **Loss**, such as damages, judgments, settlements, verdicts, and awards, until the original Limit of Liability is exhausted.

In no event shall the **Defense Only Limit** apply to **Loss**, other than **Costs of Defense**, and in no event shall the **Insurer** be obligated to pay more than the original Limit of Liability indicated in Item D of Declarations toward **Loss**, other than **Costs of Defense** within the **Defense Only Limit**.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ANV PL 0036 Rev 01.15 - Defense Only Limit                                   Page **1** of **1**



Endorsement No:  9                                 Policy Number:  ANV137167A

Named Insured:  Avadim Health, Inc.

Endorsement Effective Date:  February 28, 2021

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### DISCOVERY PERIOD – OPTIONAL TIME

This endorsement modifies insurance provided under the following:

**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that **Section VIII**. **DISCOVERY PERIOD**, of this policy is deleted in its entirety and the following is substituted therefore:

**Section VIII      DISCOVERY PERIOD**

**A**. Except as indicated below, if the Named **Insured** shall cancel or the Named **Insured** or the **Insurer** shall refuse to renew this policy, the Named **Insured** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the **"Discovery Period"**) in which to give to the **Insurer** written notice of **Claims** first made against the **Insured** during said **Discovery Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.  The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within thirty (30) days of the effective date of cancellation or nonrenewal. The Additional Premium for the **Discovery Period** shall be fully earned at the inception of the **Discovery Period**.  The Discovery Period is not cancelable.  This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium when due.

**B**. The Additional Premium Amount for:  (1) one year shall be no greater than <u>100</u>% of the "Full Amount Premium"; three (3) years shall be no greater than <u>150</u>% of the "Full Annual Premium" or six (6) years shall be no greater than <u>200</u>% of the "Full Annual Premium".  As used herein, "Full Annual Premium" means the premium level in effect immediately prior to the end of the **Policy Period.**

ANV PL 0040 Rev 04.14 - Discovery Period - Optional Time                        Page **1** of **2**

**C.** The fact that the coverage provided by this Policy may be extended by virtue of the purchase of the Discovery Period shall not in any way increase the Limit of Liability stated in ITEM D of the Declarations. For purposes of the Limit of Liability, the Discovery Period is considered to be part of, and not in addition to, the Policy Period.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.



Endorsement No:   10

Policy Number:   ANV137167A

Named Insured:   Avadim Health, Inc.

Endorsement Effective Date:   February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NON-RESCISSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the **Insurer** shall not be entitled under any circumstances to rescind this Policy.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ANV PL 0072 Rev 10.15 - Non-Rescission Endorsement                                      Page **1** of **1**



Endorsement No: 11                                           Policy Number: ANV137167A

Named Insured: Avadim Health, Inc.

Endorsement Effective Date: February 29, 2020

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**GENERAL CHANGE ENDORSEMENT**

**ADJUST SEVERABILITY OF APPLICATION**

This endorsement modifies insurance provided under the following:

**EMPLOYEE BENEFIT PLAN FIDUCIARY INSURANCE POLICY**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY**
**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**SIDE-A DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY**

Unless specifically designated herein, this Endorsement shall not serve to increase our limits of insurance, as described in the LIMITS OF LIABILITY section of the policy.

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the following changes are incorporated into the policy:

> Section IX Subsection B. **Application**
>
> **B. Application**
>
> It is agreed by the **Company** and the **Directors and Officers** that the particulars and statements contained in the **Application** and any information provided therewith (which shall be on file with the **Insurer** and be deemed attached hereto as if physically attached hereto) are true, accurate and complete and that such particulars and statements are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Company** and the **Insured Person(s)** that the statements in the **Application** or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations. Knowledge of any **Insured Person** of a misstatement or omission in the **Application** shall not be imputed to any other **Insured Person** for purposes of determining the validity of this Policy as to such other **Insured Person**, against whom this Policy shall not be rescinded. Only knowledge of the chief executive officer, chief operating officer, chief financial officer of a misstatement or omission in the **Application** shall be imputed to the **Company** for purposes of determining coverage under this Policy as respects Section I. C

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ANV PL 1000 Rev 04.14 - Severability of application                                    Page **1** of 1



Endorsement No: 12                                          Policy Number: ANV137167A

Named Insured: Avadim Health, Inc.

Endorsement Effective Date: February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERAGE EXTENSION — FEDERAL IMMIGRATION & NATIONALITY ACT**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY**
**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**

| SCHEDULE | |
|---|---|
| Maximum Aggregate Sublimit Of Liability For **Costs of Defense** Only For Any FINA **Claim**: | $25,000 |
| Retention for Any Loss Arising From a FINA **Claim**: | $100,000 |

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the amount set forth in the LIMITS OF INSURANCE section of the Declarations shall be the maximum aggregate Limit of Liability for all **Loss** under this policy. Subject to the foregoing, the limit amount designated in the SCHEDULE above shall be the maximum aggregate Limit of Liability of the **Insurer** for any **Costs of Defense** resulting from any **Claim** made against any **Insured** based upon, arising out of, or attributable to any actual or alleged violation of the Federal Immigration & Nationality Act, 8 U.S.C. Section 1101, et seq., as amended. In no event shall the Sublimit shown in the above SCHEDULE apply to **Loss** other than **Costs of Defense**, such as damages, judgments, settlements, verdicts and awards, incurred in connection with FINA **Claims**. This sublimit shall be part of and not in addition to the amount set forth in the LIMITS OF INSURANCE section of the Declarations Page.

A Retention in the amount as shown in the above SCHEDULE shall apply to any **Loss** arising from a FINA **Claim**. The Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** in excess of the above stated Retention amount.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ANV PL 0034 Rev 04.14 - Federal Immigration and Nationality Act Costs of Defense Coverage  Page **1** of **1**



Endorsement No:  13

Policy Number:  ANV137167A

Named Insured:  Avadim Health, Inc.

Endorsement Effective Date:  February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## FIDUCIARY LIABILITY INSURANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**

In consideration of payment of additional premium and in reliance upon the statements made in the **Application**, which is made a part of and deemed attached to this Policy and subject to the Declarations and the limitations, conditions, provisions, and other terms of this Policy, the **Insurer** and the **Insureds** agree as follows:

**A.**  Solely as respects coverage provided by this Endorsement, the Declarations of this Policy is amended as follows:

Item B of the Declarations, Named Insured is deleted in its entirety and replaced with the following:

### Item B

***Sponsor Organization & Mailing Address:***

**Named Insured:**
**Avadim Health, Inc.**

**Mailing Address:**
**81 Thompson Street**
**Asheville, NC 28803**

Item D of the Declarations, Limits of Liability is deleted in its entirety and replaced with the following:

### Item D

| LIMITS OF LIABILITY* | Shared Limit | Separate Limit | Aggregate Limit |
|---|---|---|---|
| Aggregate Limit for all **Loss** under all Coverages combined: | | | $5,000,000 |

| | | | |
|---|---|---|---|
| Limit for all **Loss** for all **Claims** other than **Employment Practices Claims, Securities Claims**, and/or **Fiduciary Claims** | $5,000,000 | N/A | |
| Limit for all **Loss** for all **Claims** for **Employment Practices Wrongful Acts** | $1,000,000 | N/A | |
| Limit for all **Loss** for all **Fiduciary Claims** | $1,000,000 | N/A | |
| Limit for all **Loss** for all **Claims** for **Third Party Discrimination** | $1,000,000 | | |
| Limit of Liability for all **Loss** for all **Securities Claims** | $5,000,000 | | |
| **SUBLIMITS OF LIABILITY*** | | | |
| Sublimit for all **Loss** for all **Derivative Demand Investigation Costs** | $250,000 | | |
| Sublimit for all **Loss** for all **Crisis Management Expenses** | N/A | | |

 *Includes **Costs of Defense**

Item E of the Declarations, Retention is of this Policy is amended by the addition of the following:

**Item E**

| RETENTION* | |
|---|---|
| **COVERAGE PART** | **RETENTION** |
| Each **Fiduciary Claim** | $0 |

 *Applies to **Costs of Defense**

Item G of the Declarations, Pending and Prior Litigation Date of this Policy is amended by the addition of the following:
**Item G**

| PENDING AND PRIOR LITIGATION DATE | |
|---|---|
| **COVERAGE PART** | **DATE** |
| **Fiduciary Claims** | 6/16/2015 |

B.   Solely for the purposes of the coverage provided by this endorsement, Section I. Insuring Agreements of this Policy is amended by the addition of the following:

F.   The **Insurer** shall pay on behalf of the **Insured** all **Loss** which the **Insured** shall become legally obligated to pay as a result of a **Fiduciary Claim** for a **Wrongful Act** first made against any **Insured** during the **Policy Period**, or the applicable Discovery Period pursuant to Section VIII of this Policy, and reported to the **Insurer** in compliance with Section VII of this Policy.

C.   Solely for the purposes of the coverage provided by this Endorsement, Section ll. Definitions of this Policy is amended by the addition of the following:

**Section II.  Definitions**

"**Administration**" shall mean:
   1) giving advice, counsel or notice to **Employees**, participants, or beneficiaries of a **Covered Plan**;
   2) handling and maintaining records of a **Covered Plan**; or
   3) activities affecting enrollment, termination, or cancellation of Employees, participants or beneficiaries of a **Covered Plan**.

"**Administrator**" shall mean any natural person responsible for the **Administration** of any **Covered Plan**.

"**Benefits**" shall mean those entitlements granted to the **Employees**, participants or beneficiaries under any **Covered Plan**.

"**Covered Plan**" shall mean:
   1) any "employee pension benefit plan" or "employee welfare benefit plan" (as each is defined in **ERISA)**, located anywhere in the world and which is operated solely by the **Sponsor Organization** and solely for the **Employees** of the **Sponsor Organization** and which existed on or before the **Policy Period**, or which is created or acquired after the Inception Date; provided that any coverage with respect to such plan created or acquired during the Policy Period shall apply only for **Wrongful Acts** committed, attempted or allegedly committed or attempted after the effective date of such creation or acquisition and shall be subject to the Definition of **Subsidiary** in Section **C.** (Definition **DD**) of this Endorsement;
   2) any cafeteria plan, as defined in Section 125 of the Internal Revenue Code of 1986 (as amended), from which the participants may choose among two or more **Benefits** consisting of cash and qualified **Benefits**,

or any dependent care assistance program, (as defined in Section 129 of the Internal Revenue Code of 1986 (as amended)), sponsored solely by the **Sponsor Organization** for the **Employees** of the **Sponsor Organization** and/or their beneficiaries;

3) any other employee benefit plan or program added to this Policy by specific written endorsement including an **ESOP**, multiple employer welfare arrangement (MEWA), a voluntary **Employees** beneficiary association (VEBA), or a **Non-Qualified Plan)** which is sponsored solely by the **Sponsor Organization** for **Employees** of the **Sponsor Organization**; or

4) the following government-mandated programs: unemployment insurance, Social Security or disability insurance, but solely with respect to a **Wrongful Act** concerning the **Administration** of a **Covered Plan**.

**Covered Plan** shall not include any "multiemployer plan" (as defined by **ERISA**).

"**ERISA**" shall mean the Employee Retirement Income Security Act of 1974 (as amended) (including, but not limited to, amendments relating to **ERISA** contained in the Consolidated Omnibus Budget Reconciliation Act of 1985, Health Insurance Portability and Accountability Act of 1996, the Newborns' and Mothers' Health Protection Act of 1996, the Mental Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of 1998), and including any rules or regulations under **ERISA** and any similar common or statutory law of any other jurisdiction anywhere in the world to which a **Covered Plan** is subject.

"**ESOP**" shall mean any "employee stock ownership plan" (as defined in **ERISA)**, or any other **Covered Plan** under which investments are made primarily in securities of the **Sponsor Organization** or whose assets at any time within twelve months prior to the inception date of this Policy were comprised of twenty percent (20%) or more of securities of the **Sponsor Organization**.

"**Fiduciary**" shall mean a fiduciary as defined in **ERISA** and any rules or regulations under **ERISA** with respect to a **Covered Plan** or a person or entity who exercises discretionary control in the management of a **Covered Plan** or the disposition of its assets.

"**Fiduciary Claim"** shall mean any **Claim** against an **Insured** alleging a **Wrongful Act** by an **Insured**, in their capacity as such;

"**Indemnifiable Loss**" shall mean **Loss** for which the **Sponsor Organization** has indemnified or is permitted or required to indemnify any **Insured Person**.

"**Sponsor Organization**" shall mean the entity named in the **Sponsor Organization** section of this endorsement and any **Subsidiary.**

Solely for the purposes of the coverage provided by this endorsement, Section ll. Definitions **C.** "**Claim**", **L.** "**Domestic Partner**", **M.** "**Employee**", **R.** "**Insured**", **S.** "**Insured Person**", **T.** "**Insurer**", **V.** "**Loss**", **EE.** "**Subsidiary**" and **GG.** "**Wrongful Act**" of this Policy, are deleted in their entirety and replaced with the following:

**C.** "**Claim**" shall mean:

   1) any written demand for monetary, non-monetary or injunctive relief;

   2) any written request to toll or waive any statute of limitations;

   3) any civil proceeding in a court of law or equity or an arbitration proceeding, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment or similar pleading and/or any criminal proceeding which is commenced by the return of an indictment or similar document; or

   4) any administrative or regulatory proceeding or investigation, including an investigation brought by the U.S. Department of Labor, the Pension Benefit Guaranty Corporation or any similar governmental agency commenced by the filing of a notice of charges, a formal notice of investigation or similar document.

   **Claim** shall not include any grievance or arbitration subject to a collective bargaining agreement. A **Claim** shall be deemed to have been first made at the time notice of the **Claim** is first received by any **Insured**.

**L.** "**Domestic Partner**" shall mean any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Sponsor Organization**.

**M.** "**Employee**" shall mean any natural person whose labor or service is engaged by and directed by the **Sponsor Organization**. **Employee** shall not include any independent contractor, leased employee, temporary worker or outside service provider.

**R.** "**Insured**" shall mean the **Sponsor Organization**, any **Covered Plan**, any **Insured Person**, and if added to the Policy by specific written endorsement, any natural person for whose **Wrongful Acts** the **Sponsor Organization** is legally responsible.

**S.** "**Insured Person**" shall mean any past, present or future natural person who is a director, trustee, officer, general partner, governor, investment committee member, management committee member, member of the board of managers or **Employee** of the **Sponsor Organization** or a **Covered Plan** who is an actual or alleged **Fiduciary** or **Administrator** of a **Covered**

**Plan**, and as to all of the above, solely in his or her capacity as a **Fiduciary** or **Administrator** of such **Covered Plan**. The term **Insured Person** shall not include any **Fiduciary** or **Administrator** who is a lawyer, accountant, actuary or investment advisor not employed as such on a full time basis by the **Sponsor Organization**.

T. "**Insurer**" shall mean the insurance company identified in Item A of the Declarations.

V. "**Loss**" shall mean damages, judgments (including pre-judgment interest and post-judgment interest on that portion of a covered judgment), settlements and **Costs of Defense**; however, **Loss** shall not include: (1) civil or criminal fines or penalties imposed by law, except (i) the administrative assessment of a five percent (5%) or less civil penalty permitted under Section 502(i) of **ERISA** and (ii) the civil penalties of twenty percent (20%) or less for violations by a **Fiduciary**, permitted under Section 502(l) of **ERISA**, with respect to covered settlements or judgments; (2) the return or reversion to any employer of any contribution or asset of a **Covered Plan**; (3) the multiplied portion of multiplied damages; (4) taxes or tax penalties; (5) any amount for which an **Insured** is not financially liable or which is without legal recourse to an **Insured**; (6) any sum, amount or payment which constitutes restitution or disgorgement, is uninsurable as a matter of law or constitutes the return of any fees or expenses in the **Administration** of a **Covered Plan**; or (7) **Benefits** or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act**, is payable as a personal obligation of an **Insured Person**, is non-**Indemnifiable Loss** and is not legally payable from a **Covered Plan**.

Subject to the other terms, conditions and exclusions of this Policy, coverage will be afforded for **Costs of Defense** where a **Claim** otherwise covered under this Policy seeks a recovery for items (1) through (7) above. Where permitted by law, **Loss** shall also include, subject to the other terms, conditions and exclusions of this Policy, punitive or exemplary damages and the multiple portions of any multiplied damage award, judgments or settlements to the extent insurable under the law of any applicable jurisdiction most favorable to insurability.

EE. "**Subsidiary**" shall mean any entity in which the **Sponsor Organization** owns, directly or indirectly, more than fifty percent (50%) of the voting stock:

1) on or before the Inception Date of this Policy;

2) subsequent to the Inception Date of this Policy by reason of being created or acquired by the **Sponsor Organization** after such date, if the entity's total assets do not exceed twenty-five percent (25%) of

the total consolidated assets of the **Sponsor Organization** as of the Inception Date of this Policy; or

3) subsequent to the Inception Date of this Policy by reason of being created or acquired by the **Sponsor Organization** other than as described in 2 above, if the **Sponsor Organization**, within ninety (90) days after the effective date of such creation or acquisition, provides the **Insurer** with written notice thereof and agrees to any premium adjustment and/or coverage revision that may be required by the **Insurer**.

GG. "**Wrongful Act**" shall mean:

1) as respects any **Insured** other than an **Administrator**, any actual or alleged  breach of the  responsibilities,  obligations  or duties imposed by **ERISA** in their capacity as a **Fiduciary** of any **Covered Plan**, or

2) any matter claimed against any **Insured** solely by reason of his, her or its status and duties as a **Fiduciary** of any **Covered Plan**; and

3) as respects an **Administrator**, any actual  or alleged  act, error or omission, solely in the performance of the A**dministration** of any **Covered Plan**.

D. Solely for the purposes of the coverage provided by this endorsement, Section III. Exclusions is deleted in its entirety and replaced by the following:

**Section III**.     **Exclusions**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A. alleging, arising out of, based upon, relating to,  or attributable to the **Insured** gaining any profit, advantage or remuneration to which the **Insured** was not legally entitled; provided however, this exclusion shall only apply when it is finally adjudicated that such conduct occurred;

B. alleging, arising out of, based upon, relating to,  or attributable to the committing in fact of any criminal or deliberate fraudulent act, or any knowing or willful violation of any statute, rule or law, including, but not limited to, **ERISA**; provided however, this exclusion shall only apply when it is finally adjudicated that such conduct occurred;

(The **Wrongful Act** of any **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of Exclusions A and B above.)

C. for discrimination in violation of any law, except that this exclusion shall not apply to discrimination in violation of **ERISA**;

D. alleging, arising out of, based upon, relating to, or attributable to any **Wrongful Act** or **Related Wrongful Acts** or any fact, circumstance or situation which has been the subject of any notice or **Claim** given under any other policy of which this Policy is a renewal or replacement;

E. alleging, arising out of, based upon, relating to, or attributable to any pending or prior civil, criminal, administrative or investigative proceeding involving any as of the Pending and Prior Date stated in paragraph A, Item G PENDING AND PRIOR LITIGATION DATE of this Endorsement, or any **Wrongful Act** or **Related Wrongful Acts** or any fact, circumstance or situation underlying or alleged in such proceeding;

F. alleging, arising out of, based upon, relating to, or attributable to the failure to fund a **Covered Plan** in accordance with **ERISA** or the **Covered Plan** instrument, or the failure to collect or make contributions to a **Covered Plan**, except that this exclusion shall not apply to **Costs of Defense**;

G. alleging, arising out of, based upon, relating to, any act, error or omission by any **Insured** in their capacity as a fiduciary or administrator of any plan, fund or program other than any **Covered Plan** or by reason of his, her or its status as a fiduciary or administrator of such other plan, fund or program, even if such service is at the direction or request of the **Sponsor Organization**;

H. for bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible property, including the **Loss** of use thereof;

I. alleging, arising out of, based upon, relating to, or attributable to any **Wrongful Act** as respects a **Covered Plan** taking place at the time when the **Sponsor Organization** did not sponsor such **Covered Plan** or when any **Insured** was not acting as a **Fiduciary** or **Administrator** of a **Covered Plan**;

J. alleging, arising out of, based upon, relating to, attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, **Pollution**, including but not limited to, any **Claim** for financial loss to the **Sponsor Organization** or a **Covered Plan**, its security holders or its creditors.

K. for actual or alleged libel, slander, or defamation;

ANV PV 0104 Rev 05.16 - Fiduciary Liability Insurance Endorsement                    Page **8** of **12**

L.  alleging, arising out of, based upon or attributable any actual or alleged breach of duty or negligent act, error or omission by an **Insured** in violation of the Health Insurance Portability and Accountability Act ("HIPAA").

M.  for any alleged violation of responsibilities, duties or obligations imposed by any law concerning Social Security, unemployment insurance, workers' compensation, disability insurance, or any similar or related federal, state or local law or regulation, or for any actual or alleged violation of the Fair Labor Standards Act, Worker Adjustment and Retraining Notification Act (WARN), Occupational Safety and Health Act (OSHA), the National Labor Relations Act (NLRA), or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation other than COBRA or **ERISA**.

N.  for any alleged violation of any federal, state or local wage and hour law, including but not limited to:  the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in  connection with work related activities  (herein, "Earned Wages") (as opposed to tort-based or statutory back pay or front pay damages for discrimination) or benefits based upon such wages or overtime pay, failure to provide or enforce legally required meal or rest break periods, for improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**, the failure to pay minimum wage or other underpayment of wages,  any unfair business practice claim or any tort arising out of the failure to pay Earned Wages, or any **Claim** seeking Earned Wages because any **Employee** or purported **Employee** was improperly classified or mislabeled as "exempt".

E.  Solely for the purposes of the coverage provided by this endorsement, the following sections of the Policy are amended as follows:

Section IV. Limit of Liability is deleted in its entirety and replaced with the following:

### Section IV. Limit of Liability

A.  The **Insurer** shall be liable to pay **Loss** resulting from a covered **Fiduciary Claim** in excess of the applicable Retention amount stated in paragraph A., Item E. of this Endorsement, up to the applicable Limit for all **Loss** for all **Fiduciary Claims** stated in paragraph A. Item D. of this Endorsement. The **Insurer's** maximum liability for all **Loss** on account of all **Claims** combined, including **Costs of Defense**, shall be the Aggregate Limit set forth in paragraph A.  Item D. of this Endorsement.  Under no circumstances shall the **Insurer** be responsible to pay any **Loss**, including **Costs of Defense**, in excess of the Aggregate Limit.

B. If Separate Limits are stated in paragraph A. Item D. of this Endorsement as respects Limit for all **Loss** for all **Fiduciary Claims**, then such Separate Limit shall be the maximum amount of the **Insurer's** liability for all **Loss** arising out of all **Fiduciary Claims** first made against the **Insureds** during the Policy Period, or the Discovery Period (if applicable).  Such Separate Limit shall be part of, and not in addition to, the Aggregate Limit for all **Loss** under this Policy and shall in no way serve to increase the Aggregate Limit for all **Loss**.

If Shared Limits are stated in paragraph A. Item D. of this Endorsement, then each such Shared Limit shall be the maximum amount of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period**, or the Discovery Period if applicable, with respect to all **Loss** to which such Shared Limit of Liability applies. Each Shared Limit shall be part of, and not in addition to, the Aggregate Limit.

If a single **Claim** is covered in whole or in part under more than one Shared Limit, Separate Limit or Sublimit, the maximum amount of the **Insurer's** liability for all **Loss**, combined, on account of such **Claim** shall not exceed the larger(est) of such applicable Shared Limit, Separate Limit or Sublimit, subject to reduction through any prior payments of **Loss** under such applicable Limit or Sublimit.  Under no circumstance shall the **Insurer** be responsible to pay any **Loss**, including **Costs of Defense**, in excess of the Aggregate Limit.

All **Related Wrongful Acts** that, pursuant to Section VII of this Policy, are considered made or received during the Policy Period or Discovery Period (if applicable), shall also be subject to the applicable Limits of Liability set forth in this Endorsement. Each of the Limits of Liability for the Discovery Period (if applicable) shall be part of, and not in addition to, each of the corresponding Limits of Liability for the **Policy Period**.

C. **Costs of Defense** shall be part of, and not in addition to, the Limit of Liability stated in paragraph A. Item D. of this Endorsement, including but not limited to the Limits of Liability described as Shared, Separate or Sublimits. Such **Costs of Defense** shall serve to reduce and may totally exhaust the Limit of Liability. If the applicable Limit of Liability is exhausted by payment of **Loss**, the **Insurer's** obligations, including without limitation any duty to defend, shall be completely fulfilled and extinguished.

Section V.  Retention is deleted in its entirety and replaced with the following:

**Section V.  Retention**

**A.** The applicable **Retention** specified in paragraph A. Item E RETENTION of this Endorsement shall be a condition precedent to coverage and must be paid by the **Sponsor Organization** before the **Insurer** has any payment obligation, and shall apply to all covered **Loss**, including **Costs of Defense** for any **Fiduciary Claim**.

**B.** One Retention shall apply to **Loss** arising from each **Claim** alleging the same **Wrongful Act** or **Related Wrongful Acts**.  The **Named Sponsor** shall be responsible for any amount within the Retention.

**C.** More than one **Claim** involving the same **Fiduciary Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim**, and only one Retention and one Limit of Liability shall be applicable to such single **Claim**.  All such **Claims** constituting a single **Claim** shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which the notice of circumstance involving any such **Fiduciary Wrongful Act** or **Related Wrongful Acts** was reported under this Policy or any other policy providing similar coverage.

Section VI, VII, VIII, and IX of the Policy are modified as follows:

**A. Section VI**.  **Costs of Defense and Settlements** is hereby amended as follows:
The term "**Company**" is deleted from paragraph (C) and is replaced with the term "**Sponsor Organization**".

Paragraph H. is deleted in its entirety and replaced with the following:

**H.** The **Insurer** will have no obligation to pay **Loss**, including **Costs of Defense**, or to defend or continue to defend any **Claim** under any Insuring Agreement or endorsement after the applicable Limit or the Aggregate Limit set forth in Section A.  Item D. of this Endorsement is exhausted by the payment of **Loss**, including **Costs of Defense**.

**B. Section VII**. **Notice of Claim** is hereby amended as follows:
The term "**Company**" is deleted from paragraph (B) and is replaced with **Sponsor Organization**.

**C. Section VIII**. **Discovery Period** is hereby amended as follows:
The term "**Company**" is deleted from paragraph (A) and is replaced with **Sponsor Organization**.

**D. Section IX**.  **General Conditions** is hereby amended as follows:
1) The term "**Company**" is replaced with the term "**Sponsor Organization**"

wherever it appears.

2) Section IX. E **Outside Entity and Joint Venture Provision** is hereby deleted in its entirety.

3) Section IX. G **Coverage Extensions**, paragraph (2) Worldwide Provision, is hereby deleted in its entirety and replaced with the following:

2) Worldwide Provision

The coverage provided under this Policy shall apply worldwide. The term **Insured Person** is deemed to include the entities or persons who serve in equivalent positions in foreign **Subsidiaries**.

E. **Section IX**. **General Conditions** is hereby amended by adding the following to the end thereof:

**Waiver of Recourse**

The **Insurer** shall have no right of recourse against any **Insured Person** for any payment of **Loss** by the **Insurer** under this Policy because of a **Wrongful Act** of such **Insured Person** if the premium for the Policy was not paid by an **Insured Plan** or **Sponsor Organization**.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ANV PV 0104 Rev 05.16 - Fiduciary Liability Insurance Endorsement          Page **12** of **12**



Endorsement No:   14

Policy Number:   ANV137167A

Named Insured:   Avadim Health, Inc.

Endorsement Effective Date:   February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FIDUCIARY LIABILITY DEFINITION OF LOSS EXTENSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**FIDUCIARY LIABILITY INSURANCE ENDORSEMENT**

Unless specifically designated herein, this Endorsement shall not serve to increase the **Insurer's** Limits of Liability, set forth in Item D. of this Policy.

In consideration of the premium charged and solely as respects coverage as is provided by the Fiduciary Liability Insurance Endorsement (hereinafter "Fiduciary Endorsement") attached to this policy, it is agreed by the **Insured** and **Insurer** that the following changes are incorporated into the Fiduciary Endorsement:

In Section C. Definition V. of the Fiduciary Endorsement, the Definition of **"Loss"** is amended by the addition of the following:

1.  **Loss** shall include costs, fees and expenses incurred by or on behalf of the I**nsured** to comply with a **Voluntary Settlement Program**, as defined below (hereinafter " **Voluntary Compliance Costs")**. Provided that the **Insurer's** maximum aggregate Limit of Liability for **Voluntary Compliance Costs**, in the aggregate, shall be $100,000 (which amount shall be part of and not in addition to, the **Insurer's** maximum Aggregate Limit set forth in paragraph A.  Item D. of the Fiduciary Endorsement attached to this Policy.

    A **"Voluntary Settlement Program"** means any program of voluntary compliance or resolution or similar settlement program entered into between a federal or state administrative or regulatory governmental agency, including the United States Internal Revenue Service, and the **Organization.**

2.  The definition of **"Loss"** is amended by the addition of the following exception to subparagraph (1) thereof:

    (iii) any civil money penalties imposed upon an **Insured** for violation of Section 507 of Title V of the Pension Protection Act of 2006 (the "PPA"); provided the **Organization**'s maximum aggregate liability for all such civil money penalties on account of all **Claims** first made during the **Policy Period** shall be twenty-five thousand dollars $25,000 which amount shall be part of and not in addition to, the **Insurer's** maximum Aggregate Limit set forth in paragraph A.  Item D. of the Fiduciary Endorsement attached to this Policy and, furthermore, that no deductible amount shall apply to **Loss** constituting civil money penalties imposed upon an **Insured** for violation of Section 507 of Title V of the PPA and (iv) any civil money penalties imposed upon an Insured for inadvertent violation of the Patient Protection and

ANV PL 0103 Rev 01.16 - Fiduciary Liability Definition Of Loss Extension Endorsement        Page **1** of **3**

Affordable Care Act, as amended ("PPACA"), and any rules or regulations promulgated thereunder; provided the **Insurer's** maximum aggregate liability for all such civil money penalties on account of all **Claims** first made during the **Policy Period** shall be $25,000 which amount shall be part of and not in addition to, the **Insurer's** maximum Aggregate Limit of Liability set forth in paragraph A.  Item D. of the Fiduciary Endorsement attached to this Policy and, furthermore, that no deductible shall apply to **Loss** constituting civil money penalties imposed upon an **Insured** for inadvertent violation of PPACA, and any rules or regulations promulgated thereunder.

3. **"Loss"** shall also include civil money penalties imposed upon an **Insured** for violation(s) of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, provided, however, that the **Insurer's** maximum aggregate Limit of Liability for all such civil money penalties imposed shall be $50,000, which amount shall be part of and not in addition to, the **Insurer's** maximum Aggregate Limit set forth in paragraph A.  Item D. of the Fiduciary Endorsement attached to this Policy; any five percent (5%) or less civil penalty imposed upon an **Insured** under Section 502(i) of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder, and any amendments thereto, with respect to covered settlements or judgments; or any twenty percent (20%) or less civil penalty imposed upon an **Insured** under Section 502(i) of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder, and any amendments thereto, with respect to covered settlements or judgments.

4. Subject to Paragraphs (a) through (d) below, subparagraph (1) of the Definition of **Loss** shall not apply to civil penalties imposed upon an **Insured** as a **Fiduciary** under Section 502(c) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "Section 502(c) Penalties") subject to the following:

(a)      The **Insurer's** maximum limit of liability for all **Loss** on account of all **Claims** for Section 502(c) Penalties shall be $500,000, which amount shall be part of and not in addition to, the **Insurer's** maximum Aggregate Limit set forth in paragraph A.  Item D. of the Fiduciary Endorsement attached to this Policy.

(b) The **Insurer** shall not be liable for **Loss** on account of any **Claim** for Section 502(c) Penalties based upon, arising from, or in consequence of any fact or circumstance of which any **Insured** had knowledge as of **6/16/2015** and which (i) a reasonable person would suppose might afford grounds for a **Claim** which would fall within the scope of coverage hereunder, or (ii) which indicate the probability of any such **Claim**.

(c)      No deductible amount shall apply to **Loss** constituting civil penalties imposed upon an **Insured** for violation of Section 5 02(c) of the Employee Retirement Income Security Act of 1974, as amended.

The coverage afforded pursuant to paragraphs (1) and (2) of this endorsement shall not apply to any civil money penalties imposed upon an **Insured** for violation of Section 507 of Title V of the Pension Protection Act of 2006.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.



Named Insured:  Avadim Health, Inc.

Endorsement Effective Date:  February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Cyber Exclusion - 2020**

This endorsement modifies insurance provided under the following:

**EMPLOYEE BENEFIT PLAN FIDUCIARY INSURANCE POLICY**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY**
**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**SIDE-A DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that there shall be no coverage under this Policy for any **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable, in whole or in part, or resulting from any actual or alleged:

(1) theft, loss, disclosure, collection, storage, retention, inability to access, alteration or corruption of, or use or misuse of any **Protected Information**;

(2) failure to report, respond to or disclose the theft, loss, disclosure, collection, storage, retention, inability to access, alteration or corruption of, or use or misuse of any **Protected Information**;

(3) violation of any federal, state, local or foreign statute, law, rule, or regulation (as amended) governing the correction, collection, protection, retention, handling, control, disposal, processing, disclosure, sharing, sale, maintenance, acquisition, storage, access to, use or misuse of any **Protected Information**;

(4) interruption, outage, inability to access, compromise of, or corruption of **Computer Systems** or any data residing thereon;

(5) trading losses, trading liabilities or change in value of accounts; or

(6) loss, transfer or theft of monies, securities or tangible property to, from, or in the care, custody or control of, the **Insured**.

The following definitions apply to this endorsement:

"**Computer System**" means any computer hardware, software, data storage, networking equipment and back up facilities, any components thereof, or other associated devices or equipment (including, but not limited to wireless and mobile devices), and are owned, operated, controlled, or leased by or on behalf of (i) the **Insured**, (ii) any third party from which the **Insured** receives services or

products, (iii) any third party to which the **Insured** provides services or products, or (iv) any third party with which the **Insured** has a contractual relationship.

"**Protected Information**" means any information of others in an **Insured's** or a **Data Holder's** care, custody or control or for which an **Insured** or **Data Holder** is legally responsible, including, but not limited to:

(1) any non-public information that is protected under the **Insured's** publicly available privacy policy (as amended);

(2) information from which an individual may be uniquely and reliably identified or contacted, or which allows access to an individual's financial, medical, or other records or accounts, including, but not limited to an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories, usernames, authentication information, security information, passwords, or biometric information;

(3) any information about and individual that is not publicly available, including, but not limited to videos, photographs, internet browsing history, customer proprietary network information (CPNI), and geolocation information;

(4) any information concerning an individual that is protected pursuant to any federal, state, local or foreign statute, law, rule, or regulation (as amended) intended to govern the correction, collection, retention, handling, control, disposal, processing, disclosure, sharing, sale, maintenance, acquisition, storage, access to, or use or misuse of personal, financial, medical or other sensitive information, including, but not limited to:

(i) Insurance Portability and Accountability Act of 1996 (as amended) (HIPAA) or the Health Information Technology for Economic and Clinical Health Act (HITECH Act) and their implementing regulations, or protected health-related information under any similar federal, state, local or foreign law;

(ii) the Gramm-Leach Bliley Act of 1999 and its implementing regulations, or protected personal information under any similar federal, state, local or foreign statute, law or regulation;

(iii) the California Security Breach Notification Act (CA SB 1386) and Massachusetts 201 CMR 17;

(iv) the Identity Theft Red Flags under the Fair and Accurate Credit Transactions Act of 2003;

(v) Fair Credit Reporting Act;

(vi) section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce;

(vii) the Data Protection Act of 1998 or similar legislation to comply with the European Union Data Protection Directive 95/46/EC of 1995; or by the European Union General Data Protection Regulation (GDPR).

(viii) New York Cybersecurity Regulation (23 NYCRR Part 500);

(ix) the California Consumer Privacy Act of 2018;

(x) the Biometric Information Privacy Act, or any similar federal, state, municipal or local statutory biometric privacy law, statute, legislation, or any such similar law anywhere in the world; or

(xi) other federal, state, local or foreign statutes, laws, rules, or regulations similar to those described above;

(5) any information that is not publicly available, and which is held under an obligation, agreement, or understanding of confidentiality; or

(6) intellectual property including, but not limited to patents, trade secrets, data, designs, interpretations, forecasts, formulas, methods, practices, processes, records, reports, ideas, expressions of ideas, or other item of information that is not available to the general public.


"**Data Holder**" means a third party:

(1) to which the **Insured** has provided **Protected Information**; or

(2) that has received **Protected Information** on behalf of the **Insured**.


All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged



Endorsement No:   16

Policy Number:   ANV137167A

Named Insured:   Avadim Health, Inc.

Endorsement Effective Date:   February 28, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**GENERAL CHANGE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**

Unless specifically designated herein, this Endorsement shall not serve to increase our limits of insurance, as described in the LIMITS OF LIABILITY section of the policy.

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the following changes are incorporated into the policy:

> It is agreed that Section III Subsections F, is amended to include the failure to pay any wages and/or benefits pursuant to the Families First Coronavirus Response Act or any similar federal, state, local or foreign statutory law or common law.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.



May 21, 2021

Bill Dixon
AmWINS Brokerage of New Jersey
105 Fieldcrest Ave Suite 200
Edison, NJ 08837

**SUBJECT:**

**Insured: Avadim Health, Inc.**
**Policy #: ANV137167A**
**Policy Change#: 1**
**Effective Date: 2/28/2022**

Dear Bill,

Enclosed is Endorsement #17 and specific document(s) for Avadim Health, Inc.

After reviewing these document(s), please notify us immediately of any needed changes.  Please distribute the document(s) to the appropriate parties.

This Endorsement is added to and made part of the policy.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Sincerely,

*Kevin McCormack*



Endorsement No: 17                                    Policy Number: ANV137167A

Named Insured: Avadim Health, Inc.

Endorsement Effective Date: February 28, 2022

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## RUN OFF ENDORSEMENT

This endorsement modifies insurance provided under the following:

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY

| Schedule | |
|---|---|
| Additional Premium: | $144,000 |
| Run-off Coverage Effective Date: | 2/28/2022 |
| Run-off Coverage Expiration Date: | 2/28/2028 |

In consideration of the payment of the Additional Premium listed above, (which shall be fully earned at the inception date of this endorsement), it is agreed by the **Insured** and **Insurer** that:

1. **Section III Discovery Period** is deleted in its entirety and replaced as follows:

   RUN OFF COVERAGE

A. In consideration of the Additional Premium paid, the **Insured**(s) shall have a period from **2/28/2022** to **2/28/2028** (herein after referred to as the "**Discovery Period**") in which to give written notice to the **Insurer** of **Claims** first made against the **Insured(s)** during the Discovery Period for any **Wrongful Act(s)** occurring on or prior to the Run-off Coverage Effective Date listed above. The **Insurer** shall not be liable to make payment under any extension in connection with any **Claim** arising out of, based upon or attributable to a **Wrongful Act** or **Related Wrongful Acts** committed after the Run-off Coverage Effective Date.

B. The purchase of the Discovery Period shall not in any way increase the Aggregate Limit of Liability stated in Item D of the Declarations. For purposes of the Limit of Liability, the Discovery Period is considered to be part of, and not in addition to, the **Policy Period**.

ML - Primary  Run Off Endorsement                                    Page **1** of **2**

**Section IX. General Conditions- A. Cancellation** is deleted in its entirety and replaced as follows:

Coverage as is afforded under this endorsement may only be cancelled by the **Insurer** if the **Company** does not pay the premium when due.  Coverage afforded under this endorsement may not be cancelled by the **Insured** for any reason.  The Additional Premium stated above shall be deemed fully earned at the effective time and date of this coverage and is non-returnable.

**Section IX. General Conditions- D. Conversion to Run-Off Coverage** is deleted in its entirety.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

ML - Primary  Run Off Endorsement                                           Page **2** of **2**