# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:25-cv-00222-MR-WCM

| | | |
|---|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **MEMORANDUM OF DECISION AND ORDER** |
| STEPHEN WOODY, DAVID FANN, and HE, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion to Dismiss HE, Inc's Amended Counterclaims [Doc. 19].

## I.     PROCEDURAL BACKGROUND

By the present action, Associated Industries Insurance Company, Inc. ("AIIC") seeks a declaration that the insurance policy that it issued to Avadim Health Inc. ("Avadim") does not afford coverage for a judgment entered against two of Avadim's officers, Defendants Stephen Woody and David Fann, and in favor of Defendant HE, Inc. ("HE").[1]  [Doc. 1].  HE in turn asserts

---

[1] While the Complaint describes HE as a "nominal" defendant, such a designation does not appear in the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 17.  Thus, the Court treats HE as a standard defendant and, for clarity's sake, refers to all three defendants by their proper names.

counterclaims for breach of contract and a declaration that AIIC is obligated to indemnify Woody and Fann under the policy for the amount of the judgment. [Doc. 17]. AIIC now moves to dismiss those counterclaims pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 19]. HE has responded [Doc. 21], and AIIC has replied [Doc. 22]. Accordingly, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

Because standing is an element of subject matter jurisdiction, a motion to dismiss for lack of standing is properly analyzed under Federal Rule of Civil Procedure 12(b)(1). See Martineau v. Wier, 934 F.3d 385, 390 n.2 (4th Cir. 2019). For such a motion, the moving party bears the burden of proving that subject matter jurisdiction exists. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347-48 (4th Cir. 2009). The Court should grant the motion only "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In making this determination, the Court should "regard the pleadings' allegations as mere evidence on the issue, and may consider

evidence outside the pleadings without converting the proceeding to one for summary judgment." Id.

**B.    Rule 12(b)(6) Standard**

The central issue for resolving this Rule 12(b)(6) motion is whether the counterclaims state a plausible claim for relief.  See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009).  In considering such a motion, the allegations in the counterclaims are accepted as true and construed in the light most favorable to the non-movant.    Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).  Although well-pled facts are accepted as true, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" are not. Id.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of the cause of action.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do." Id.  Nor will labels and legal conclusions suffice.  Id.  Rather, the counterclaims must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  "A claim has facial plausibility when the [non-movant] pleads factual content that allows the court to draw the reasonable inference that

3

the [movant] is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Ultimately, the well-pled factual allegations must move the counterclaims from possible to plausible.  Twombly, 550 U.S. at 570.

## III.   FACTUAL BACKGROUND

Viewing the well-pled factual allegations asserted in the Amended Counterclaims as true, the following is a recitation of the relevant facts.

In July 2022, HE initiated the underlying lawsuit, HE, Inc. v. Stephen Woody, et al., No. 22CVS002497-100, against Defendants Woody and Fann in the Buncombe County General Court of Justice, Superior Court Division. [Doc. 17 at ¶¶ 4,15].  HE asserted claims for negligent representation and for unfair and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq.  [Doc. 1-1: Second Am. Complaint ("SAC")].[2]  Specifically, HE alleged that Woody and Fann had made a series of misstatements and misrepresentations to HE, in reliance upon which HE entered into a Partial Debt Settlement Agreement ("PDSA") with Avadim.  Pursuant to this agreement, HE agreed to convert $1,390,000 of Avadim's outstanding debt

---

[2] HE's Amended Counterclaims incorporate all of the exhibits to AIIC's Original Complaint, including HE's Second Amended Complaint in the underlying action [Doc. 1-1]; the Judgment entered in the underlying action [Doc. 1-2]; the attorney fee award in the underlying action [Doc. 1-3]; and the Policy [Doc. 1-4].

4

into stock and to defer payment of another $1,800,000 of Avadim's debt until Avadim had completed its initial public offering. [Id. at ¶ 27]. HE alleged that in making this agreement, it specifically relied on representations by Woody and Fann to the effect that they would take Avadim public. [Id. at ¶ 22]. At the time of the events giving rise to the underlying lawsuit, Woody was Avadim's CEO and chairman of its board of directors, while Fann was Avadim's President and a member of its board of directors. [Id. at ¶¶ 7, 9].

HE proceeded to trial against Woody and Fann on both claims. [Doc. 17 at ¶ 17]. A jury rendered a verdict in HE's favor [Doc. 17 at ¶ 19; Doc. 17-2: Verdict], and on March 28, 2025, a Judgment was entered against Woody and Fann in the amount of $1,770,000, [Doc. 17 at ¶ 20; Doc. 1-2: Judgment]. More specifically, the Judgment awarded compensatory damages in the amount of $1,390,000 as follows: (1) $600,000 against Woody for negligent misrepresentation; (2) $600,000 against Fann for negligent misrepresentation; (3) $189,999 against Woody for unfair and deceptive trade practices; and (4) $1 against Fann for unfair and deceptive trade practices. [Doc. 1-2: Judgment]. The Judgment also awarded treble damages under the UDTPA of $379,998 against Woody and $2 against Fann, for a total judgment of $1,770,000. [Id.].

The Judgment award was a final adjudication of Woody and Fann's liability to HE for its negligent misrepresentation and UDTPA claims. [Doc. 17 at ¶¶ 35-36]. Nothing in the Judgment or the Verdict indicates that the compensatory damages amounted to any disgorgement, restitution of ill-gotten gains, or recessionary damages. [Id. at ¶ 55]. The SAC does not indicate that HE was seeking an award of any disgorgement, restitution of ill-gotten gains, or recessionary damage. [Id. at ¶ 56]. Further, the Jury Instructions did not prompt the jury to make any findings regarding any disgorgement, restitution of ill-gotten gains, or recessionary damage. [Id. at ¶ 57]. And nothing in the Judgment indicates or otherwise adjudicates that Woody or Fann, by their negligent misrepresentations, personally gained any profit, advantage, remuneration or financial advantage to which they were not legally entitled. [Id. at ¶¶ 58-59].

To satisfy the Judgment, Woody and Fann filed a claim under the Private Company Management Liability Insurance Policy (the "Policy") issued by AIIC to Avadim. [Doc. 1 at ¶¶ 85-110]. This Policy obligates AIIC to "pay on behalf of an Insured Person all Loss for which such Insured Person is not indemnified by the Company" and is "legally obligated to pay as a result of a Claim for a Wrongful Act first made against the Insured Person during the Policy Period," and "reported to [AIIC]." [Doc. 1-4 at 11].

6

It is undisputed that both Woody and Fann are "Insured Persons" under the Policy. [Doc. 17 at ¶ 46].

The Policy further provides, in pertinent part, that: "Loss shall not include: . . . (7) contractually owed amounts; [or] (8) any disgorgement or restitution of ill-gotten gain or recessionary damages." [Doc. 1-4 at 18]. Further, the Policy is subject to an Improper Advantage Exclusion, which states, in pertinent part, as follows:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:
>
> A. alleging, arising out of, based upon, relating to, or attributable to:
>
> 1) an Insured gaining any profit, advantage, remuneration or financial advantage to which they were not legally entitled; provided however, this exclusion shall only apply if it is finally adjudicated that such conduct occurred.

[Id. at 20-21].

By the present action, AIIC seeks a declaration that it does not have a duty to indemnify Woody and Fann for the Judgment. [Doc. 1 at ¶ 1]. HE, in turn, asserts two Amended Counterclaims against AIIC: (1) a claim for a declaratory judgment that AIIC is obligated to pay HE per its indemnification obligations to Woody and Fann as "Insured Persons" within the meaning of the Policy and (2) a claim for breach of contract for AIIC's failure to pay under

7

the Policy.  [Doc. 17 at ¶¶ 47-153].  AIIC now moves to dismiss HE's counterclaims, arguing that (1) HE lacks standing to assert the counterclaims, (2) coverage is not available under the Policy because of the Improper Advantage Exclusion, (3) coverage is not available because of the restitution exception to "Loss," and (4) coverage is not available because of the "contractually owed amounts" exception to "Loss."  [Doc. 19 at 2-3].

## IV.    DISCUSSION

### A.    Standing

For a district court to enter a declaratory judgment, "the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution."  White v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 913 F.2d 165, 167 (4th Cir. 1990).  In other words, to obtain a declaratory judgment from a federal court, a claimant must have Article III standing.  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27 (2007).

"The test for a case or controversy . . . is whether the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests."  White, 913 F.2d at 167 (internal quotation marks omitted).  "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Id.  Applying this

standard, the Fourth Circuit has held that a third party to an insurance contract has Article III standing to seek a declaratory judgment against the insurer when the third party has obtained, or will soon obtain, a judgment against the insured. Miller v. Augusta Mut. Ins. Co., 157 F. App'x 632, 637-38 (4th Cir. 2005) (per curiam).

Here, HE brings claims for declaratory judgment and breach of contract against the insurer of its judgment debtors. The underlying judgment awards damages to HE, which "makes the coverage question definite and concrete." Id. at 637. Further, HE and AIIC "clearly have adverse legal interests," and a ruling on the Policy would "resolve a real, concrete question based on existing facts." Id. Thus, the Court concludes that HE has Article III standing to bring its counterclaims.[3]

**B.     Policy Exclusions and Exceptions**

The Court now turns to AIIC's argument that the language of the Policy itself precludes HE's counterclaims.

---

[3] AIIC argues that under North Carolina law, HE does not qualify as a third-party beneficiary of the Policy and thus lacks standing to bring the breach of contract claim. [Doc. 19-1 at 7]. HE's standing, however, is "a question of federal law, not state law." Hollingsworth v. Perry, 570 U.S. 693, 715 (2013).

### 1. Choice of Law

As an initial matter, the Court must determine which law to apply in interpreting the Policy. It is undisputed that the insurance contract at issue was made in North Carolina. North Carolina law provides that "all contracts of insurance . . . made within this State . . . are subject to the laws thereof." N.C. Gen. Stat. § 58-3-1. The Policy at issue, however, contains a choice-of-law clause, which states: "All matters arising hereunder, including questions related to the validity[,] interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York." [Doc. 1-4 at 33].

A federal court applies the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). North Carolina employs the traditional lex loci rule: the court applies "the law of the situs of the claim." Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988). While the situs of a contract claim is typically "the law of the state where the contract was made," id. at 336, 368 S.E.2d at 854, North Carolina has long permitted "contracting parties" to "agree that a particular jurisdiction's substantive law will govern their contract, and such a provision will generally be given effect," Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 602 (4th Cir. 2004). "The parties' choice of law is

generally binding on the interpreting court as long as they had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental policy of the state or otherwise applicable law." Wall v. Automoney, Inc., 284 N.C. App. 514, 524, 877 S.E.2d 37, 48 (2022).

HE has supplied no reason why the application of New York law lacks a reasonable basis or violates a fundamental policy of North Carolina law. Thus, the Court concludes that the parties' choice of law governs, and the Court will apply New York law in construing the Policy at issue.

### 2.     The Improper Advantage Exclusion

AIIC first argues that the Judgment in the underlying action constitutes a final adjudication that Woody and Fann gained a profit or advantage to which they were "not legally entitled," thus triggering the Improper Advantage Exclusion of the Policy. [Doc. 19-1 at 12, 19].

"Under New York law, contracts of insurance are strictly construed in favor of the insured and against the insurer." Scholastic Inc. v. St. Paul Fire & Marine Ins. Co., No. 23-cv-3485 (JMF), 2025 WL 2643981, at *4 (S.D.N.Y. Sept. 15, 2025). When considering a policy exclusion, "the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion [and] that the exclusion is subject to no other reasonable interpretation." Frontier Insulation Contractors, Inc. v.

11

Merchants Mut. Ins. Co., 690 N.E.2d 866, 868 (N.Y. 1997). A court only applies an exclusion if the insurer's construction is "the only one that fairly may be placed upon it." In re Donald Sheldon & Co., Inc., 186 B.R. 364, 369 (S.D.N.Y. 1995).

Here, HE has plausibly alleged facts to support its claim that the Improper Advantage Exclusion does not apply. As HE has alleged, nothing in the judgment or verdict in the underlying action indicates that the compensatory damages awarded to HE "amounted to any disgorgement, restitution of ill-gotten gains, or recessionary damages" against Woody and Fann. [Doc. 17 at ¶¶ 55-57]. Further, HE has alleged that there is nothing to indicate in the jury's verdict or the Judgment that there was a final adjudication that Woody or Fann received any profit, advantage, remuneration or financial advantage to which they were not entitled. [Id. at ¶ 58]. Accordingly, AIIC's motion to dismiss HE's counterclaim on the grounds that it is barred by the Improper Advantage Exclusion is denied.

### 3. Restitution Exception to "Loss"

The Policy requires AIIC to pay "all Loss" that Woody and Fann are "legally obligated to pay" because of a "Claim." [Doc. 1-4 at 11]. The Policy exempts, however, several categories of payments from the definition of "Loss." [Id. at 18]. One of these categories is "any disgorgement or

12

restitution of ill-gotten gain or recessionary damages." [Id.].  AIIC argues that the underlying damages award constitutes restitution, despite being labeled "compensatory damages," because "it is the return of HE's $1.39M investment per the PDSA," and the treble damages are "derivative" of this restitution.  [Doc. 19-1 at 20].

Under New York law, monetary relief is "restitutionary in nature" when it involves "disgorgement of improper profits."  Falzon v. Ford, 141 N.Y.S.3d 255, 264 (N.Y. Sup. Ct. 2021) (internal quotation marks omitted).  For a court to order restitution, a "benefit must have passed from plaintiff to defendant for which the plaintiff should be compensated in equity and good conscience."  Schuler-Haas Elec. Corp. v. Wager Const. Corp., 395 N.Y.S.2d 272, 274 (N.Y. App. Div. 1977).  As noted above, HE sufficiently alleges that nothing in the record of the underlying action indicates that Woody and Fann's wrongful conduct resulted in them having received any "improper profit" through their misrepresentations.  [Doc. 17 at ¶¶ 55-57].  Indeed, the Judgment itself explicitly labeled the damage award as "compensatory," not restitutionary.  [Doc. 1-2 at 6].  As such, AIIC's motion to dismiss HE's counterclaims on the grounds that the judgment in the underlying action is an award of restitution and thus not a "Loss" is denied.

13

### 4. "Contractually Owed Amounts" Exception to "Loss"

Another one of the categories of payments carved out from the definition of "Loss" is "contractually owed amounts." [Doc. 1-4 at 18]. AIIC argues that "the $1.39 million portion of the Judgment constitutes 'contractually owed amounts,' which are not Loss." [Doc. 19-1 at 24].

"Professional liability policies often contain an exclusion for any claim arising out of a breach of contract." 23 Appleman on Insurance Law & Practice Archive § 146.6 (2nd 2011) (alterations and internal quotation marks omitted); see Cont'l Cas. Co. v. Cnty. of Chester, 244 F. Supp. 2d 403, 409 (E.D. Pa. 2003) (interpreting an exclusion stating that "coverage does not apply to any claim arising out of a breach of contract" (alterations and internal quotation marks omitted)). "Under New York law, this type of exclusion is governed by a but-for test. Thus, only if the injury suffered by the underlying plaintiff would not exist but for the breach of contract, would the injury arise out of a breach of contract." Lepore v. Hartford Fire Ins. Co., 374 F. Supp. 3d 334, 352 (S.D.N.Y. 2019) (interpreting an exclusion that "limits coverage for any personal and advertising injury arising out of a breach of contract" (capitalization and internal quotation marks omitted)) (alterations and internal quotation marks omitted).

Here, HE has sufficiently alleged that its underlying lawsuit asserted claims that sounded in tort, not breach of contract.  [Doc. 17 at ¶¶ 51-54]. While HE alleged that Woody and Fann had committed tortious acts during the negotiating of the PDSA, HE never claimed that such conduct resulted in a breach of that agreement with Avadim.  [Id.].  As such, AIIC's motion to dismiss HE's counterclaims on the grounds that the judgment in the underlying action is an award of "contractually owed amounts" and thus not a "Loss" is denied.

## V.     CONCLUSION

For the foregoing reasons, AIIC's Motion to Dismiss HE's Amended Counterclaims is denied, and HE's Amended Counterclaims will be allowed to proceed.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Dismiss HE, Inc.'s Amended Counterclaims [Doc. 19] is hereby **DENIED.**

**IT IS SO ORDERED.**

Signed: May 20, 2026

Martin Reidinger
Chief United States District Judge

15